UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

| | |
|---|---|
| **ARMAN MOTIWALLA**, an individual,<br><br>Plaintiff,<br><br>v.<br><br>**INNOVATIVE PARTNERS L.P.**, a Texas limited partnership,<br><br>Defendant. | CIVIL ACTION<br><br>Case No. 0:25-cv-61290-LEIBOWITZ |

### VERIFIED AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

**NOW COMES** the Plaintiff, **ARMAN MOTIWALLA** ("**MOTIWALLA**" or "Plaintiff") by and through undersigned counsel, pursuant to Fed. R. Civ. P. 15, and states the following for his Amended Complaint:

### CAUSES OF ACTION

1. This is an action brought under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1140, and Florida's Private Sector Whistleblower Act (FWA) for (1) retaliation in violation of ERISA, and (2) retaliation in violation of the FWA.

### PARTIES

2. The Plaintiff, ARMAN MOTIWALLA ("MOTIWALLA") is an individual and a resident of Florida who at all material times resided in Broward County, Florida. At all material times, MOTIWALLA served as Chief Operating Officer of Defendant and was a participant, and/or beneficiary of Defendant's ERISA health benefit plans as defined under 29 U.S.C. § 1002, and a person protected under 29 U.S.C. §1140 for engaging in activity related to the reporting of ERISA

1

plan violations. MOTIWALLA performed work primarily in Broward County, Florida, during the events giving rise to this case. Venue for this action lies in the Southern District of Florida, Fort Lauderdale Division.

3. The Defendant, INNOVATIVE PARTNERS L.P. ("Defendant") is a Texas limited partnership that has its principal place of business located in Coral Springs, Florida. Defendant sponsors and administers employee health benefit plans subject to ERISA and employs in excess of 10 employees. Defendant employed MOTIWALLA, who lacked the opportunity for profit or loss in connection with his work for the Defendant, made no investments on his own as a worker, had a period of employment with the Defendant that represented permanence, had to acquiesce to the Defendant's control over his duties, and performed duties integral to the Defendant's business.

## JURISDICTION AND VENUE

4. This Court has jurisdiction of this matter under 28 U.S.C. § 1331 and has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

5. Venue is proper in the United States District Court for the Southern District of Florida because the Plaintiff worked in, and the Defendant conducts business in, and some or all of the events giving rise to Plaintiff's claims occurred in Broward County, Florida, which is within the Southern District of Florida. Venue is proper in the Fort Lauderdale Division since the action accrued primarily in Broward County, which is within the Fort Lauderdale Division.

## GENERAL ALLEGATIONS

6. Innovative Partners operates as a marketer and provider of health benefit plans governed by ERISA, selling defined benefit health plans designed under ERISA sections 104 and 4065. The company sold more than 80,000 policies with around 18-20,000 active policy holders at the time of MOTIWALLA's termination.

7. MOTIWALLA consistently opposed and reported the fiduciary breaches committed by Defendant's principals to internal leadership.

8. Beginning in April 2023, MOTIWALLA was employed as Defendant's Chief Operating Officer. As COO, MOTIWALLA exercised discretionary authority and control over the management and administration of Defendant's ERISA plans within his designated scope of responsibilities, including: (a) discretionary oversight of plan operations and compliance monitoring; (b) authority over vendor selection, contract management, and service provider oversight for plan administration; (c) discretionary decision-making regarding plan administration processes, procedures, and compliance protocols; (d) oversight and approval authority for plan-related expenditures and administrative costs; (e) discretionary authority over participant communications and plan disclosures; and (f) independent decision-making authority regarding plan compliance and regulatory reporting matters. While Ahmed Shokry serves as the named trustee of Defendant's ERISA plans with ultimate fiduciary authority, MOTIWALLA exercised independent discretionary authority within his delegated areas of plan management and worked directly with Shokry in implementing overall plan administration and fiduciary oversight. The wrongdoing referenced in ¶¶20-22, *infra*, were perpetrated by Shokry and/or CJ Pagnanelli, the Defendant's co-owners.

9. Additionally, MOTIWALLA was a participant in Defendant's ERISA health benefit plans. As Chief Operating Officer beginning in May 2023, MOTIWALLA was provided with company email address, office space, and administrative infrastructure. He was required to submit detailed daily productivity reports to company leadership and was subject to performance reviews, demonstrating an ongoing employer-employee relationship. Defendant provided MOTIWALLA with the same employment structure and benefit offerings as other acknowledged company

employees, including access to company-sponsored health benefit plans. MOTIWALLA was instructed to abandon his independent business activities and focus entirely on Defendant, with promises that his "financial prospects at Innovative Partners would exceed those of his independent brokerage," indicating comprehensive employment benefits including health coverage. As an executive-level employee working directly under company ownership, MOTIWALLA was eligible for the health benefits provided by Defendant's ERISA plans, consistent with the company's treatment of other senior employees.

10. Ahmed Shokry serves as the trustee of Defendant's ERISA plans.

11. In early 2023, MOTIWALLA was operating his own independent health insurance brokerage when Ahmed Shokry, a previous business contact, approached him to help establish and manage Innovative Partners LP, the Defendant.

12. MOTIWALLA's duties were internal-facing and primarily involved financial management, investor relations, contract management, technology implementation, administrative processes, and vendor management. He did not solicit, negotiate, underwrite, or bind any insurance coverage at any time, and he did not interact directly with any consumers.

13. In June 2023, Shokry induced MOTIWALLA to shut down his independent brokerage business and focus entirely on Defendant, directing him to transfer his sales production to the company. This requirement to abandon independent business activities demonstrates the employer's control over MOTIWALLA's professional activities.

14. MOTIWALLA worked directly under Shokry and CJ Pagnanelli, the company's co-owners, demonstrating a clear supervisory relationship typical of employment. MOTIWALLA received effective to highly effective performance reviews from the Defendant, indicating an ongoing employer-employee evaluation process.

15. Shokry assured MOTIWALLA that his financial prospects at Innovative Partners would exceed those of his independent brokerage and made specific promises regarding future compensation, demonstrating the type of ongoing compensation arrangement characteristic of employment.

16. MOTIWALLA was required to sign a Confidential Information and Invention Assignment Agreement dated November 15, 2024, which is typical of employer-employee relationships involving access to proprietary business information.

17. MOTIWALLA was instructed that as COO of Innovative Partners, any additional activities in the insurance industry should benefit the company, further demonstrating integration into the business operations.

18. Defendant provided MOTIWALLA with office space and administrative infrastructure to perform his duties, indicating an employment relationship rather than an independent contractor arrangement.

19. The Defendant treated MOTIWALLA as an employee, including through performance reviews, salary discussions, and internal role assignments.

20. In his role as Chief Operating Officer, MOTIWALLA observed that the Defendant, and its principals/agents Ahmed Shokry and/or Christopher James Pagnanelli, were violating ERISA and other laws. MOTIWALLA made repeated complaints regarding these violations.

21. Specifically, MOTIWALLA observed and complained that Defendant violated its fiduciary duties under ERISA law, 29 U.S.C. Chapter 18 and 29 CFR § 2550.404a-1, by improperly using and misappropriating plan funds and using plan funds for business costs and incentive/commission advances to Defendant's recruiters such as insurance sales agents, concealing the same from plan participants.

22. MOTIWALLA also observed and complained about the following specific ERISA violations:

   a. Fiduciary Breaches: Failure to act in the best interests of participants; self-dealing; misuse of plan assets; improper delegation of fiduciary duties; failure to properly monitor third-party service providers; conflicted decision-making;

   b. Mismanagement of Plan Funds: Commingling plan assets with corporate funds; excessive administrative fees; failure to pursue claims recoveries;

   c. Failure to Provide Required Benefits: Failure to adhere to ACA requirements; improper COBRA administration; Mental Health Parity Act violations;

   d. Prohibited Transactions: Self-dealing; excessive fees to service providers; undisclosed revenue-sharing agreements; improper relationships between fiduciaries and healthcare providers;

   e. Disclosure Violations: Failure to provide required participant notifications; failure to comply with ERISA electronic disclosure rules; failure to report conflicts of interest.

23. These violations are further substantiated by ongoing regulatory investigations and actions. The California Department of Insurance issued a Cease and Desist Order against Defendant and its principals on June 30, 2025, for unlawfully transacting insurance business without proper authority. Additionally, MOTIWALLA has been cooperating as a witness with regulatory authorities investigating Defendant's practices.

24. Furthermore, MOTIWALLA observed and complained of the Defendant's fraudulent practices toward insurance sales agents, including misrepresentations about payment terms, debit balance responsibilities, and support services. The Defendant would manufacture breaches to terminate agents and retain their business while claiming immediate payment of debit balances.

25. MOTIWALLA engaged in statutorily protected conduct under ERISA by reporting these violations to company management and refusing to participate in the illegal conduct. This protected activity occurred on multiple occasions prior to his termination on January 22, 2025.

26. As is common with whistleblowers who identify pervasive illegality and refuse to participate, MOTIWALLA became the victim of retaliation, including harassment, reduction in responsibilities, salary reduction, and ultimately wrongful termination.

## COUNT I - VIOLATION OF ERISA - RETALIATION

27. Plaintiff incorporates by reference Paragraphs 1-26 in this Count as though fully set forth below.

28. MOTIWALLA has standing to bring this claim under multiple theories as he was: (a) a participant in Defendant's ERISA plans, having been employed as Chief Operating Officer with executive-level responsibilities and provided the same benefit structure as other company employees, including eligibility for company-sponsored health benefit plans; (b) a person who provided information and testified regarding ERISA violations as contemplated by 29 U.S.C. § 1140, having made repeated internal complaints about ERISA violations to company management, including Ahmed Shokry (the plan trustee) and CJ Pagnanelli; and/or (c) a person whose cooperation and ongoing engagement with government regulatory authorities investigating ERISA plan violations constitutes protected activity under § 1140, as evidenced by his cooperation with the California Department of Insurance investigation that resulted in a Cease and Desist Order against Defendant. The participant status is further supported by Defendant's own treatment of MOTIWALLA as an employee through performance evaluations, daily reporting requirements, provision of company email and office space, and integration into the executive management structure.

29. MOTIWALLA engaged in activity protected by ERISA by observing, reporting, and refusing to participate in violations of ERISA's fiduciary duty and other provisions.

30. Defendant knew that MOTIWALLA engaged in activity protected by ERISA.

31. A causal connection exists between MOTIWALLA's engaging in activity protected by ERISA and Defendant's adverse employment actions, including his termination.

32. Defendant retaliated against MOTIWALLA in violation of 29 U.S.C. § 1140 by terminating his employment because he engaged in statutorily protected activity.

33. As a result of these ERISA violations, MOTIWALLA has been damaged in the nature of lost wages, salary, employment benefits and other compensation and is entitled to recover actual monetary losses, interest, and liquidated damages.

WHEREFORE, Plaintiff requests trial by jury, damages for lost wages and benefits, prejudgment interest, front pay, reinstatement, reasonable attorney's fees and costs as authorized under ERISA, and such other relief as the Court deems just.

## COUNT II - VIOLATION OF FLORIDA STATUTE 448.102: FLORIDA'S PRIVATE WHISTLEBLOWER ACT

34. Plaintiff incorporates by reference Paragraphs 1-26 of this Complaint as though fully set forth below.

35. MOTIWALLA was an employee of the Defendant, a private company.

36. At all material times, MOTIWALLA was to be protected from negative employment action by Florida Statute 448.102(1)-(3), commonly known as Florida's "whistleblower statute," which in relevant part provides:

> "An employer may not take any retaliatory personnel action against an employee because the employee has:
>
> (1) Disclosed, or threatened to disclose, to any appropriate governmental agency, under oath, in writing, an activity, policy, or practice of the

  employer that is in violation of a law, rule, or regulation. However, this subsection does not apply unless the employee has, in writing, brought the activity, policy, or practice to the attention of a supervisor or the employer and has afforded the employer a reasonable opportunity to correct the activity, policy, or practice;

  (2) Provided information to, or testified before, any appropriate governmental agency, person, or entity conducting an investigation, hearing, or inquiry into an alleged violation of a law, rule, or regulation by the employer, and;

  (3) Objected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation."

37. MOTIWALLA did engage in statutorily protected activity by his objections and refusal to participate in the Defendant's illegal practices.

38. Immediately after engaging in statutorily protected activity, MOTIWALLA suffered negative employment action, his termination, which is a direct result of this statutorily protected activity.

39. MOTIWALLA's termination and him engaging in statutorily protected activity are causally related.

40. The Defendant knew that MOTIWALLA was engaged in protected conduct as referenced herein.

41. The Defendant discharged, terminated and retaliated against MOTIWALLA from his employment, and otherwise retaliated against him because of his protected conduct.

42. As a direct and proximate result of the violations of F.S. § 448.102, as referenced and cited herein, MOTIWALLA has lost all of the benefits and privileges of his employment and has been substantially and significantly injured in his career path that was anticipated from his employment.

43. As a direct and proximate result of the violations of F.S. § 448.102, as referenced and cited herein, and as a direct and proximate result of the prohibited acts perpetrated against him, Plaintiff is entitled to all relief necessary to make him whole.

WHEREFORE, Plaintiff demands damages against Defendant for violation of Florida's Private Sector Whistle-blower's Act (Section 448.102, Fla. Stat.), including but not limited to all relief available under Section 448.103, Fla. Stat., such as:

(a) reinstatement of the employee to the same position held before the retaliatory personnel action, or to an equivalent position,

(b) reinstatement of full fringe benefits and seniority rights,

(c) compensation for lost wages, benefits, and other remuneration,

(d) any other compensatory damages allowable at law,

(e) attorney's fees, court costs and expenses, and

(f) such other relief this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Demand is hereby made for a jury trial under Federal Rule of Civil Procedure 38 on all issues triable of right by a jury in this action.

Respectfully submitted,

Dated: September 4, 2025

**s/ Benjamin H. Yormak**
Benjamin H. Yormak
Florida Bar Number 71272
Trial Counsel for Plaintiff
Yormak Employment & Disability Law
27200 Riverview Center Blvd., Suite 109
Bonita Springs, Florida 34134
Telephone: (239) 985-9691
Fax: (239) 288-2534
Email: byormak@yormaklaw.com

I, Arman Motiwalla, verify the foregoing under 28 U.S.C. §1746 and hereby declare under the penalty of perjury that the foregoing is true and correct.

DocuSigned by:
*Arman Motiwalla*
Arman Motiwalla
9/4/2025

## CERTIFICATE OF SERVICE

      I hereby certify that on September 4, 2025, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system. I further certify that I emailed/mailed the foregoing document and the notice of electronic filing by email to the following non-CM/ECF participants:

ARMAN MOTIWALLA
arman.motiwalla@gmail.com
720-518-9436

                                      **s/ Benjamin H. Yormak**
                                      Benjamin H. Yormak