UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case no.: 0:25-cv-61290-LEIBOWITZ

ARMAN MOTIWALLA, an individual

    Plaintiff,

v.

INNOVATIVE PARTNERS L.P., a Texas
limited partnership,

    Defendant.
_____/

**DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES
TO PLAINTIFF'S VERIFIED AMENDED COMPLAINT**

Defendant, INNOVATIVE PARTNERS L.P. ("Innovative"), through undersigned counsel hereby files its Answer and Affirmative Defenses to Plaintiff, ARMAN MOTIWALLA's ("Plaintiff" or "Motiwalla"), Verified Amended Complaint [DE 15] (the "Amended Complaint"). In response to the correspondingly numbered paragraphs of the Amended Complaint, Innovative answers as follows:

**CAUSES OF ACTION**

1. Admitted that this purports to be an action under ERISA and the FWA; however, denied that Plaintiff is entitled to such relief.

**PARTIES**

2. Admitted that Plaintiff is an individual, resident of Florida, that Plaintiff served as Chief Operating Officer of Innovative, and that venue is proper; however, Innovative denies that Plaintiff was a participant, and/or beneficiary of Innovative's ERISA health benefit plans as

1

defined under 29 U.S. § 1002, and further denies that Plaintiff was a person protected under 29 U.S.C. § 1140 for engaging in activity related to the reporting of ERISA plan violations.

3. Admitted that Innovative is a Texas limited partnership that has its principal place of business located in Coral Springs, Florida. The remaining allegations in this paragraph are denied.

## JURISDICTION AND VENUE

4. Admitted for jurisdictional purposes only.

5. Admitted for venue purposes only.

## GENERAL ALLEGATIONS

6. Admitted only that Innovative marketed and provided defined health benefit plans to the public. Denied that Innovative administered or even offered ERISA plans for its own employees; in fact, any employees of Innovative that had health insurance procured their own directly from third parties. The remaining allegations in this paragraph are denied.

7. Denied.

8. Admitted only that Defendant began providing services to Innovative in or around April or May 2023, was given the title of Chief Operating Officer, and had discretionary decision-making authority with respect to selection, implementation and oversight of merchant payment processing for Innovative. The remaining allegations in this paragraph are denied.

9. Admitted only that Defendant was given the title of Chief Operating Officer beginning in or around April or May 2023, and was given a company email address, office space and administrative support. Denied that Innovative administered or even offered ERISA plans for its own employees; in fact, any employees of Innovative that had health insurance procured their own directly from third parties. The remaining allegations in this paragraph are denied.

10. Admitted.

11. Admitted only that in early 2023 Plaintiff was operating his own independent health insurance brokerage and that Ahmed Shokry ("Shokry") asked Plaintiff to work with Innovative, including to help setting up Innovative's merchant processors and protocols. The remaining allegations in this paragraph are denied.

12. Denied.

13. Denied. At all times material, Plaintiff continued to operate his own sales room for health benefit plans.

14. Denied.

15. Denied.

16. Admitted only that Plaintiff did, in fact, execute a Confidential Information and Invention Assignment Agreement dated November 15, 2024 as a "Service Provider" to Innovative. The remaining allegations in this paragraph are denied.

17. Denied.

18. Admitted only that Innovative did provide Plaintiff with office space and administrative infrastructure to perform services for Innovative. The remaining allegations in this paragraph are denied.

19. Denied.

20. Denied.

21. Denied.

22. Denied.

23. Admitted only that the California Department of Insurance issued a Cease and Desist Order against Innovative in or around June 2025. Incidentally, the issuance of that order

was caused by the fraudulent and deceptive sales practices of Plaintiff and his girlfriend, Madison Bounahra, while they were selling plans for Innovative through their own separate sales rooms. Without knowledge as to whether Plaintiff is cooperating with any regulatory authority, therefore denied. The remaining allegations in this paragraph are denied.

24. Denied.

25. Denied.

26. Denied.

## COUNT I – VIOLATION OF ERISA – RETALIATION

27. Innovative incorporates and realleges its answers in paragraphs 1 through 26 above as though fully set forth herein.

28. Denied.

29. Denied.

30. Denied.

31. Denied.

32. Denied.

33. Denied.

## COUNT II – VIOLATION OF FLORIDA STATUTE 448.102: FLORIDA'S PRIVATE WHISTLEBLOWER ACT

34. Innovative incorporates and realleges its answers in paragraphs 1 through 26 above as though fully set forth herein.

35. Denied.

36. Denied.

37. Denied.

38. Denied.

39. Denied.

40. Denied.

41. Denied.

42. Denied.

43. Denied.

## GENERAL DENIAL

Innovative denies each and every allegation in the Amended Complaint which is not expressly admitted above.

## AFFIRMATIVE DEFENSES

1. <u>First Affirmative Defense</u>: Plaintiff lacks statutory standing to bring anti-retaliation claims against Innovative under Fla. Stat. § 448.102 (the "FWA") or the Employee Retirement Income Security Act of 1974 ("ERISA") because, at all times material, Plaintiff was not an employee of Innovative under applicable law. Indeed, Plaintiff insisted to be engaged, classified and treated as an independent contractor of Innovative through a Delaware limited liability company called Huriya LLC ("Huriya"), which, upon information and belief, was and is owned or controlled by Plaintiff and/or his girlfriend, Madison Bounahra. Plaintiff specifically insisted on this arrangement because, according to Plaintiff, he was going through a separation and divorce from his wife at the time, Cynthia Scanlon, and he wanted to hide his compensation from her to avoid paying additional child support. A final judgment dissolving their marriage was ultimately entered in March 2024. *See Motiwalla v. Scanlon*, Palm Beach County, Florida Circuit Court case no. 50-2023-DR-005624-XXXX-SB. All payments from Innovative for Plaintiff's services were

made to Huriya, as required by Plaintiff, and appropriate IRS Form 1099's were issued by Innovative to Huriya to reflect those payments.

Pursuant to the applicable provisions of ERISA, to bring a civil action as a "participant" under 29 U.S.C. § 1132(a)(1), as Plaintiff purports to do here, Plaintiff must have been an employee or a member of an employee organization. *See* 29 U.S.C. § 1002(7) (defining "participant" for ERISA purposes). Likewise, to bring a civil action for retaliation under the FWA, as Plaintiff purports to do here, Plaintiff must have been an employee. *See* Fla. Stat. § 448.102 ("An employer may not take any retaliatory personnel action against an *employee*…") (emphasis added); Fla. Stat. § 448.103(1)(a) ("An *employee* who has been the object of a retaliatory personnel action in violation of this act may institute a civil action …") (emphasis added). "The term [employee] does not include an independent contractor." Fla. Stat. § 448.101(2). Because Plaintiff was not an employee of Innovative, Plaintiff's claims are barred.

2. <u>Second Affirmative Defense</u>: Plaintiff's ERISA claim fails because, even if Plaintiff could establish that he was a *de facto* employee of Innovative, at all times material Innovative did not offer an employer-sponsored ERISA health plan to any of its own employees. Any employees of Innovative that had health insurance or another form of coverage for medical, dental, vision and the like, procured such policies or plans from third parties. Accordingly, Plaintiff could not possibly have "exercise[d] any right to which he is entitled under the provisions of an employee benefit plan" as contemplated under 29 U.S.C. § 1140, because he was not and could not possibly have been a participant, beneficiary, or fiduciary of any benefit plan sponsored by Innovative for its employees. He therefore lacks standing to bring this ERISA claim against Innovative. *See McKinnon v. Blue Cross and Blue Shield of Alabama*, 935 F. 2d 1187, 1193 (11th Cir. 1991) (holding that "29 U.S.C. § 1132, ERISA's civil enforcement provision, empowers only

participants, beneficiaries, fiduciaries, and the Secretary of Labor to bring civil actions to enforce the Act.")

3. <u>Third Affirmative Defense</u>: Plaintiff failed to notify or object to Innovative about any purported illegal activity, policy or practice of Innovative prior to his termination, in writing or otherwise, and thus did not allow Innovative a reasonable opportunity to correct the purported activity, policy or practice. Accordingly, Plaintiff's FWA claim is barred pursuant to Fla. Stat. § 448.103(c).

4. <u>Fourth Affirmative Defense</u>: Innovative terminated its relationship with Plaintiff for legitimate, non-retaliatory reasons, and accordingly, Plaintiff's FWA and ERISA claims fail. More specifically, Innovative terminated its relationship with Huriya (and thus, Plaintiff), because Plaintiff caused Innovative significant financial losses and other damages through his grossly negligent, fraudulent, deceptive and otherwise bad faith acts and omissions. In addition to other such acts and omissions to be proven at trial:

a. Plaintiff fraudulently induced Innovative to engage him through Huriya. Plaintiff misrepresented to Innovative representatives that Plaintiff was an expert on merchant payment processing in "card not present" ("CNP") environments – which are considered high-risk in the payment processing industry – touting his prior experience as an owner and operator of CBD products company that sold online and over the phone. Plaintiff assured Innovative that he had the knowledge and experience to select the right processors and implement appropriate payment processing protocols and systems to minimize chargebacks and payment reserves. Plaintiff lied about his knowledge and experience. He initially signed Innovative up with more traditional, risk-adverse payment processors instead of CNP-friendly processors that were, as Innovative later learned, well known in the industry. As a result, when Innovative's levels of chargebacks exceeded

what these traditional processors could tolerate, Innovative's cost to process transactions and reserve requirements increased substantially and ultimately resulted in Innovative's termination from their processing platforms. Those terminations, in turn, left Innovative with a short and, more importantly, negative, processing history, which made it difficult to secure replacement processors at a reasonable cost. To complicate matters, Plaintiff wholly failed to implement what is known in the industry as a "rapid dispute resolution" alert system (an "RDR"). An RDR is an automated system that alerts the merchant (here, Innovative) when a customer initiates a dispute relating to a charge before the dispute reaches the applicable bank, which would have allowed Innovative to process refunds before the dispute resulted in a formal chargeback. Innovative ultimately learned that RDR's are commonly deployed in CNP environments, but Plaintiff failed to implement one or even suggest its use. Innovative suffered millions of dollars in excess processing charges and reserve holdbacks that could have easily been avoided if Plaintiff had any idea what he was doing, as he misrepresented. Plaintiff only lasted as long as he did because he was a manipulative liar. He would lie about the level of chargebacks being incurred, lie about the processing fees Innovative was being charged, lie about having an RDR in place, and he would break down and cry when questioned about these issues to gain sympathy and elicit pity from Innovative's representatives. Ultimately, when Innovative finally engaged a seasoned payment processor consultant, Innovative's chargeback rate, processing charges, and reserve requirements dropped significantly – to levels that Innovative had never enjoyed under Plaintiff's oversight.

        b.      Plaintiff committed fraud in connection with the sales room that he owned (through a company called Reia & Co), which operated as a downline agent selling health benefit plans offered by Innovative to the public. Plaintiff used his unique access to Innovative's payment gateway and processing systems to enrich himself and his girlfriend, Madison Bounahra, at the

expense of Innovative and its customers. For example, Plaintiff would manually re-charge customers' credit cards dozens of times (up to 80 times, in some instances) if the card had been declined or charged back on a sale made by his room or Ms. Bounahra's room, all without the customers' knowledge or consent. Plaintiff would also manually reverse refunds intended for customers on charged-back transactions for his room and Ms. Bounahra's room without Innovative's knowledge or consent. The purpose of Plaintiff's misconduct was to artificially inflate his and Ms. Bounahra's sales numbers for as long as possible to, in turn, reduce their debit balances owed to Innovative and receive advances on commissions that they knew they would never eventually earn. Plaintiff's despicable conduct not only caused Innovative to pay Plaintiff's and his girlfriend's companies more than they were entitled to, but it also landed Innovative on what's known in the payment processing industry as the MATCH list. MATCH stands for "Member Alert To Control High-risk merchants", and the list is a private, shared database used by global processors such as Visa and Mastercard to identify merchants who have been terminated from processing for serious violations, such as excessive chargebacks, fraudulent transactions, or PCI non-compliance. Being on the MATCH list makes it extremely difficult to obtain a new merchant account from other processors for a period of five years. As a result, Innovative's processing fees and reserve requirements increased by millions of dollars, resulting in substantial losses to Innovative. It has also severely limited the pool of processors willing to work with Innovative.

      c.     Plaintiff fraudulently induced Innovative to pay Plaintiff's attorneys' fees in defense of a TCPA claim against him which was unrelated to Innovative but instead pertained to Plaintiff's own separate mass texting and lead list generation business. Plaintiff apparently misrepresented to Innovative's attorneys at the time that Innovative had approved the attorneys'

representation of Plaintiff, while Plaintiff simultaneously misrepresented to Innovative that the attorneys' fees being incurred by were related to Innovative's business.

5. <u>Fifth Affirmative Defense</u>: To the extent Plaintiff purports to allege a violation of the anti-retaliation provisions of ERISA with respect to the health benefit plans that Innovative administered for persons other than Innovative's own employees, Plaintiff failed to exhaust his administrative remedies under the plan documents before commencing this action, and therefore Plaintiff failed to satisfy a condition precedent.

6. <u>Sixth Affirmative Defense</u>. Plaintiff's claims are barred by the *in pari delicto* doctrine. To the extent that the finder of fact determines that Innovative violated ERISA as described by Plaintiff in paragraph 22 of the Amended Complaint – which Innovative strongly denies – any such violations were caused, in whole or in part, by Plaintiff's own acts or omissions.

7. <u>Seventh Affirmative Defense</u>. Innovative is entitled a set-off against any verdict in favor of Plaintiff for damages incurred by Innovative as a result of (i) Plaintiff's breach of that certain Agreement dated July 17, 2023 between Innovative, Reia & Co, and Plaintiff, as guarantor, for Plaintiff's failure to pay the outstanding debit balance owed thereunder, (ii) Plaintiff's fraud and other tortious conduct described in the Fourth Affirmative Defense, above, and (iii) Innovative's forthcoming counterclaims against Plaintiff.

Date: <u>September 18, 2025</u>    Respectfully submitted,

By: /s/ *Joshua L. Spoont*
Joshua L. Spoont
Florida Bar No. 53263
josh@sodhispoont.com
Eric M. Sodhi
Florida Bar No. 583871
eric@sodhispoont.com
Nathaniel M. Edenfield
Florida Bar No. 91034

nate@sodhispoont.com
Mauricio A. Torres
Florida Bar No. 1059067
mauricio@sodhispoont.com
**SODHI SPOONT PLLC**
3050 Biscayne Blvd., Ste. 701
Miami, FL 33137
Tel: 305-907-7573
<u>Counsel for Defendant</u>

**<u>CERTIFICATE OF SERVICE</u>**

**I HEREBY CERTIFY** that the foregoing was filed on the CM/ECF system and that a true and correct copy was served therefrom by e-mail on September 18, 2025 on all counsel or parties of record on the service list below:

Benjamin H. Yormak
Florida Bar Number 71272
*Trial Counsel for Plaintiff*
Yormak Employment & Disability Law
27200 Riverview Center Blvd., Suite 109
Bonita Springs, Florida 34134
Telephone: (239) 985-9691
Fax: (239) 288-2534
Email: byormak@yormaklaw.com

*/s/ Joshua L. Spoont*
Joshua L. Spoont
Eric M. Sodhi
Nathaniel M. Edenfield
Mauricio Torres
