**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

---

**ARMAN MOTIWALLA**, an individual,

        Plaintiff,

v.

**INNOVATIVE PARTNERS L.P.**, a Texas
limited partnership,

        Defendant.

**CIVIL ACTION**

**Case No. 0:25-cv-61290-LEIBOWITZ**

---

<u>**COUNTER-DEFENDANT ARMAN MOTIWALLA'S ANSWER AND AFFIRMATIVE
DEFENSES TO COUNTERCLAIM**</u>

Counter-Defendant, ARMAN MOTIWALLA ("Motiwalla"), through undersigned counsel, hereby files his Answer and Affirmative Defenses to Counter-Plaintiff INNOVATIVE PARTNERS L.P.'s Counterclaim [DE 26] (the "Counterclaim"). In response to the correspondingly numbered paragraphs of the Counterclaim, Motiwalla answers as follows:

<u>**ANSWER TO COUNTERCLAIM**</u>

**I. INTRODUCTION**

1. Denied. The allegations in this paragraph consist of characterizations, conclusions, inflammatory rhetoric, and legal conclusions to which no response is required. To the extent a response is deemed necessary, Motiwalla denies each and every allegation contained therein.

2. Denied. The allegations in this paragraph consist of characterizations, conclusions, inflammatory rhetoric, and legal conclusions to which no response is required. To the extent a response is deemed necessary, Motiwalla denies each and every allegation contained therein.

1

Motiwalla specifically denies that he abused any position of trust, engaged in fraud, conversion, or breaches of duty or contract, or caused Innovative any losses.

**II. PARTIES, JURISDICTION, AND VENUE**

3. Admitted that Motiwalla is the Plaintiff in the underlying action and was, at all material times, a resident of Broward County, Florida, over 18 years of age. The remaining allegations are denied.

4. Motiwalla lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

5. Motiwalla lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph concerning the propriety of joining Reia & Co as a counterclaim defendant and therefore denies the same. This paragraph also contains legal conclusions to which no response is required.

6. This paragraph contains legal conclusions to which no response is required. To the extent a response is deemed necessary, Motiwalla denies that this Court has jurisdiction over the Counterclaim as to him for the reasons set forth in his affirmative defenses below.

7. Motiwalla lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph concerning personal jurisdiction over Reia & Co and therefore denies the same.

8. This paragraph contains legal conclusions to which no response is required. To the extent a response is deemed necessary, the allegations are denied.

9. Motiwalla lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

10. This paragraph contains legal conclusions to which no response is required. To the extent a response is deemed necessary, the allegations are denied.

### III. BACKGROUND

11. Motiwalla admits that Innovative offers health care benefit plans to individuals and that Ahmed Shokry was involved in founding and operating Innovative. Motiwalla lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies the same.

12. Motiwalla lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

13. Motiwalla lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

14. Motiwalla lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph concerning Innovative's funding arrangements and therefore denies the same. Motiwalla admits that Innovative offered advance incentive payments to recruiters.

15. Motiwalla lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

### A. The Hiring of Motiwalla

16. Admitted that Shokry spoke with Motiwalla about joining Innovative and that they had worked together previously. The remaining allegations are denied.

17. Admitted that Shokry and Motiwalla had conversations during the time period referenced. The characterization of the substance and content of those conversations is denied.

3

18. Denied. Motiwalla did not misrepresent his experience or expertise. Motiwalla had substantial relevant experience in business operations, including credit card processing in card-not-present environments, and experience in the insurance and healthcare industries.

19. Denied. The allegations in this paragraph mischaracterize the nature of Motiwalla's engagement with Innovative. Motiwalla was hired as an employee of Innovative to serve as Chief Operating Officer. Any arrangement regarding payment structure was at Innovative's direction and for Innovative's benefit, not Motiwalla's. Motiwalla denies the remaining allegations, including the characterizations regarding his motivations.

20. Denied. The allegations in this paragraph mischaracterize the circumstances of Motiwalla's engagement and his relationship with Reia & Co.

21. Admitted that Motiwalla began working for Innovative in early 2023, though Motiwalla avers the correct start date was April or May 2023.

**B. Motiwalla Botched Innovative's Credit Card Processing**

22. Denied. Motiwalla performed his duties competently and professionally. The allegations in this paragraph mischaracterize Motiwalla's role and performance. Any credit card processing issues experienced by Innovative were the result of systemic problems with Innovative's business model, including its engagement in illegal and fraudulent practices, high chargeback rates due to widespread customer dissatisfaction caused by customer service and retention practices, claims and benefit handling, and Innovative management's own failures to provide adequate resources and support.

23. Motiwalla admits that card-not-present environments present heightened chargeback risks and that maintaining reasonable chargeback ratios is important. The remaining allegations are denied.

24. Motiwalla admits that there are different types of credit card processors with different risk tolerances and fee structures. The remaining allegations are denied. To the extent this paragraph suggests that Motiwalla failed to select appropriate processors, such allegations are denied.

25. Motiwalla admits that rapid dispute resolution programs exist and can be beneficial to merchants. The remaining allegations are denied.

26. Denied. Motiwalla did not lack expertise and did not make "rookie mistakes." The processor selections and configurations were appropriate given Innovative's business circumstances at the time. Any subsequent processing difficulties were caused by Innovative's underlying business practices, including violations of ERISA, customer service handling and retention tactics employed throughout its organization, and systemic compliance failures.

27. Denied. To the extent Innovative experienced elevated chargebacks and processing difficulties, these were caused by Innovative's own illegal business practices, deceptive product design, customer service handling and retention tactics throughout its organization, and systemic failures in its business model, not by any failures on Motiwalla's part.

28. Denied. The allegations in this paragraph mischaracterize Motiwalla's actions and communications. Motiwalla kept Innovative management appropriately informed of processing matters and took reasonable steps to address processing challenges caused by Innovative's underlying business problems.

29. Denied. To the extent Motiwalla made operational decisions regarding refund processing, such decisions were made in good faith and in the exercise of his business judgment as COO. Any characterization of such decisions as improper or deceptive is denied.

30. Denied. The allegations in this paragraph grossly mischaracterize the circumstances surrounding Innovative's processor relationships. To the extent Innovative had difficulty

maintaining processor relationships, this was due to Innovative's high chargeback rates, which in turn were caused by widespread customer complaints resulting from product design issues, customer service and claims handling practices employed throughout Innovative's organization. Motiwalla repeatedly raised concerns about these customer service and claims handling practices and compliance issues to Innovative management.

31. Denied. The allegations regarding MATCH list placement mischaracterize the causes and circumstances. Innovative was placed on the MATCH list due to its own systemic business failures, ERISA violations, fraudulent business practices, and widespread customer complaints, not due to any actions or omissions by Motiwalla. Motiwalla repeatedly warned Innovative management about compliance issues and illegal practices that were causing customer complaints and regulatory problems.

32. Denied. The allegations in this paragraph mischaracterize Motiwalla's actions and communications.

33. Denied. The allegations in this paragraph mischaracterize the circumstances and improperly seek to blame Motiwalla for systemic problems caused by Innovative's own illegal business practices.

**C. Motiwalla's Fraudulent Conduct is Brought to Light**

34. Denied. Motiwalla did not engage in any fraudulent activities. The allegations in this paragraph are false and defamatory.

35. Motiwalla lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph concerning when Innovative hired a consultant and therefore denies the same.

36. Denied. Motiwalla did not engage in fraudulent conduct. The allegations in this paragraph are false, inflammatory, and defamatory. To the extent Motiwalla made operational decisions regarding transaction processing in his role as COO, such decisions were made in good faith, in the exercise of his business judgment, and consistent with industry practices. Any characterization of legitimate business decisions as fraudulent is denied.

37. Denied. The allegations regarding Motiwalla's intent and motivations are false. Motiwalla acted at all times in good faith and in what he reasonably believed to be Innovative's best interests.

38. Denied. The allegations in this paragraph are false. Motiwalla was not a fraudster and was not terminated for fraud. Motiwalla was terminated in retaliation for his repeated complaints about Innovative's violations of ERISA and other laws.

**D. Reia & Co's Breach of Recruiter Agreement and Debit Balance**

39. Denied. The Recruiter Agreement attached at Doc. 26-1 is unsigned and is thus not a true and correct copy. Motiwalla admits that a recruiter agreement was entered into and that Innovative sent a letter dated May 29, 2025. Motiwalla denies that any amounts are owed under the Recruiter Agreement for the reasons set forth in his affirmative defenses below. Motiwalla specifically denies that the alleged debit balance is accurate, properly calculated, or owed. The exhibits referenced are documents that speak for themselves.

40. Motiwalla admits that the Recruiter Agreement provided for incentive advances and that Reia & Co received such advances. The remaining allegations, including the calculation and amount of any alleged debit balance, are denied. Motiwalla specifically denies that the alleged debit balance of $1,215,880.83 is accurate or owed for the reasons set forth in his affirmative defenses below.

41. Motiwalla admits that the Recruiter Agreement contained provisions regarding incentive credits and debit balances. Motiwalla denies that any amounts are currently owed or that the alleged debit balance has been properly calculated.

42. Motiwalla admits that the Recruiter Agreement contained certain provisions regarding aggregation of advances and credits. Motiwalla denies that Innovative has properly applied these provisions or that any amounts are owed.

43. Motiwalla denies the allegations in this paragraph, including the assertion that cancellation rates should not have exceeded 10% on a month-over-month basis under the circumstances present here. The high cancellation rates experienced by Reia & Co and other recruiters were caused by Innovative's systemic problems, including deceptive product design, retention and claims handling practices, ERISA violations, poor product quality, inadequate customer service, and Innovative's failure to deliver promised services to members.

44. Motiwalla denies the allegations in this paragraph. High cancellation rates throughout Innovative's sales organization were indicative of Innovative's systemic business failures and illegal practices, not incompetence or fraud on the part of individual recruiters.

45. Motiwalla admits that the Recruiter Agreement contained provisions regarding persistency rates. Motiwalla denies that any breach occurred or that any amounts are owed.

46. Denied. Motiwalla specifically denies that the alleged debit balance of $1,215,880.83 is accurate, properly calculated, or owed. The alleged debit balance is inflated, improperly calculated, and not owed for the reasons set forth in Motiwalla's affirmative defenses below.

47. Denied. Motiwalla denies that the Recruiter Agreement was properly terminated for cause and denies that any debit balance is owed.

48. Motiwalla admits that he signed the Recruiter Agreement. Motiwalla denies that he is liable as a guarantor for the reasons set forth in his affirmative defenses below, including but not limited to: the guaranty is unenforceable under the statute of frauds; the guaranty was procured by fraud, duress, and undue influence; there was no consideration for the guaranty; the underlying obligations are disputed and not owed; and Innovative materially breached the Recruiter Agreement.

49. Denied. No amounts are owed by Motiwalla under the Recruiter Agreement or the guaranty provision for the reasons set forth in his affirmative defenses below.

**E. Motiwalla Causes and Hides DOI Complaints from Innovative**

50. Motiwalla admits that the California Department of Insurance issued a cease-and-desist order. Motiwalla denies the remaining allegations in this paragraph, including the false and defamatory insinuation that Motiwalla caused or concealed DOI complaints.

51. Denied. Motiwalla repeatedly informed Innovative management, including Shokry and CJ Pagnanelli, about compliance issues, customer complaints, and regulatory risks. Rather than conceal such matters, Motiwalla was the person at Innovative who raised these concerns most consistently and forcefully.

52. Motiwalla admits that DOI complaints can occur in the health benefit plan industry. The remaining allegations are denied.

53. Denied. The allegations in this paragraph are false. Motiwalla did not falsely represent that no DOI complaints had been received. To the extent DOI complaints were received, Motiwalla handled them appropriately and kept Innovative management informed of material compliance and regulatory matters.

54. Denied. The allegations in this paragraph are false and defamatory. Motiwalla did not lie about or conceal DOI complaints. Motiwalla repeatedly raised concerns about customer service and claims handling practices, compliance issues, and regulatory risks to Innovative management. Any compliance failures or regulatory problems were caused by Innovative's systemic illegal practices and the actions of its principals, not by Motiwalla.

55. Motiwalla lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph concerning Reia & Co's call recordings, sales practices, or the content of the cease-and-desist order and therefore denies the same. To the extent this paragraph makes allegations about Motiwalla's intent, knowledge, or conduct, such allegations are denied as false.

56. Motiwalla lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph concerning Nu Life Health LLC and any alleged TCPA lawsuit and therefore denies the same.

57. Denied. The allegations in this paragraph are false. Motiwalla did not improperly instruct Innovative to pay legal fees for any entity other than Innovative, and did not misrepresent the nature of any legal expenses.

### COUNT I - Fraud (against Motiwalla)

58. Motiwalla incorporates by reference his responses to paragraphs 1 through 57 above as though fully set forth herein.

59. Denied. Motiwalla did not make any material misrepresentations or conceal or fail to disclose any material facts. Each sub-allegation is specifically denied:

(a) Denied. Motiwalla did not misrepresent his expertise or qualifications. Motiwalla possessed substantial relevant experience in business operations, credit card processing, and the health benefit industry.

(b) Denied. Motiwalla did not misrepresent or conceal the existence of DOI complaints. Motiwalla appropriately informed Innovative management of material compliance and regulatory matters.

(c) Denied. Motiwalla did not misrepresent or conceal the true reasons for Innovative's MATCH list placement.

(d) Denied. Motiwalla did not misrepresent or conceal the true nature of any legal fees or costs.

60. Denied. Motiwalla had no duty to disclose the matters alleged because: (a) the allegations are false and Motiwalla possessed no such "superior knowledge" of false information; (b) Motiwalla did not know that Innovative was acting on any mistaken assumptions; and (c) Motiwalla made no partial disclosures that created any duty of further disclosure. This paragraph also contains legal conclusions to which no response is required.

61. Denied. Motiwalla did not make any false statements, did not act with knowledge of falsity, did not act with reckless disregard for the truth, and did not intend that Innovative rely on any false statements.

62. Denied. Innovative did not justifiably or reasonably rely on any alleged false statements or concealments because no such false statements or concealments occurred. This paragraph also contains legal conclusions to which no response is required.

63. Denied. Innovative did not suffer any damages as a direct and proximate result of any actions or omissions by Motiwalla. To the extent Innovative suffered any damages, such damages were caused by Innovative's own illegal business practices, ERISA violations, systemic compliance failures, and fraudulent conduct. This paragraph also contains legal conclusions to which no response is required.

**COUNT II - Conversion (against Motiwalla and Reia & Co)**

11

64. Motiwalla incorporates by reference his responses to paragraphs 1 through 57 above as though fully set forth herein.

65. Denied. Innovative did not own or have an immediate right to possess any funds that were allegedly wrongfully diverted. This paragraph contains legal conclusions to which no response is required. To the extent a response is necessary, the allegations are denied.

66. Denied. Motiwalla did not engage in any practice of repeatedly processing declined credit cards or re-charging refunded transactions for improper purposes. To the extent Motiwalla made operational decisions regarding transaction processing in his role as COO, such decisions were made in good faith and in the exercise of reasonable business judgment. Reia & Co did not receive any incentive payments that were not earned or owed.

67. Denied. Motiwalla did not make any misrepresentations or concealments regarding legal fees.

68. Denied. Neither Reia & Co nor Motiwalla wrongfully exercised dominion and control over any of Innovative's funds. This paragraph contains legal conclusions to which no response is required. To the extent a response is necessary, the allegations are denied.

69. Denied. Neither Reia & Co nor Motiwalla wrongfully deprived Innovative of any funds or caused Innovative to suffer any damages. To the extent Innovative suffered any damages, such damages were caused by Innovative's own actions and illegal business practices. This paragraph contains legal conclusions to which no response is required. To the extent a response is necessary, the allegations are denied.

### COUNT III - Breach of Fiduciary Duty (against Motiwalla)

70. Motiwalla incorporates by reference his responses to paragraphs 1 through 57 above as though fully set forth herein.

71. Motiwalla denies the characterization that he "refused" to be a W-2 employee. Any arrangement regarding Motiwalla's classification was made at Innovative's direction and for Innovative's benefit. Motiwalla denies the remaining allegations in this paragraph, including the false allegations regarding his motivations.

72. Motiwalla admits that he acted as COO of Innovative and was entrusted with managing day-to-day operations. The remaining allegations are denied.

73. Denied. Motiwalla did not owe fiduciary duties to Innovative. Motiwalla was either an employee or an independent contractor, neither of which relationship creates fiduciary duties as alleged. This paragraph contains legal conclusions to which no response is required. To the extent a response is necessary, the allegations are denied.

74. Denied. Motiwalla did not accept or undertake any fiduciary responsibilities beyond those inherent in his role as COO. This paragraph contains legal conclusions to which no response is required. To the extent a response is necessary, the allegations are denied.

75. Denied. Motiwalla did not breach any fiduciary duties. Each sub-allegation is specifically denied:

(a) Denied. Motiwalla did not conceal DOI complaints or lie about their existence. Motiwalla kept Innovative management appropriately informed of material compliance and regulatory matters.

(b) Denied. Motiwalla did not repeatedly charge declined credit cards or re-charge refunded cards for improper purposes, and did not generate fraudulent revenue. Any operational decisions regarding transaction processing were made in good faith and in the exercise of reasonable business judgment.

(c) Denied. Motiwalla did not divert Innovative's funds to pay legal fees of any other entity.

(d) Denied. Motiwalla did not favor his own sales room or engage in self-dealing.

(e) Denied. Motiwalla implemented appropriate credit card processing safeguards given the circumstances and resources available. To the extent Innovative experienced processing difficulties, these were caused by Innovative's own systemic failures and illegal business practices, not by any failures on Motiwalla's part.

76. Denied. Innovative did not suffer any damages as a direct and proximate result of any alleged breaches of fiduciary duty by Motiwalla. To the extent Innovative suffered any damages, such damages were caused by Innovative's own illegal business practices and systemic failures. This paragraph contains legal conclusions to which no response is required. To the extent a response is necessary, the allegations are denied.

### COUNT IV - Breach of Recruiter Agreement (against Reia & Co)

This Count is not directed at Motiwalla and thus no substantive response is required.

### COUNT V - Breach of Recruiter Agreement (against Motiwalla)

82. Motiwalla incorporates by reference his responses to paragraphs 1 through 57, 78, and 79 above as though fully set forth herein.

83. Motiwalla admits that he signed a recruiter agreement which contained a guaranty provision. Motiwalla denies that Doc. 26-1 is a true and accurate copy of such an agreement or that he is liable under a guaranty provision for the reasons set forth in his affirmative defenses below.

84. Denied. Motiwalla is not jointly and severally liable for any alleged outstanding debit balance for the reasons set forth in his affirmative defenses below.

85. Denied. Motiwalla did not materially breach the Recruiter Agreement. No debit balance is owed for the reasons set forth in Motiwalla's affirmative defenses below.

86. Denied. Innovative did not suffer any damages as a result of any breach by Motiwalla. This paragraph contains legal conclusions to which no response is required. To the extent a response is necessary, the allegations are denied.

87. Denied. Innovative is not entitled to recover attorneys' fees or costs from Motiwalla. This paragraph contains legal conclusions to which no response is required. To the extent a response is necessary, the allegations are denied.

### GENERAL DENIAL

Motiwalla denies each and every allegation in the Counterclaim which is not expressly admitted above.

### AFFIRMATIVE DEFENSES

Motiwalla asserts the following affirmative defenses to the Counterclaim. In asserting these affirmative defenses, Motiwalla does not admit any wrongdoing or liability, and specifically denies all allegations of wrongdoing or liability.

**FIRST AFFIRMATIVE DEFENSE** (Failure to State a Claim)

The Counterclaim fails to state a claim upon which relief can be granted as to each count asserted against Motiwalla.

**SECOND AFFIRMATIVE DEFENSE** (Unclean Hands)

Innovative's claims are barred by the doctrine of unclean hands because Innovative comes to this Court with unclean hands, having engaged in violations of ERISA, fraudulent business practices, deceptive product design, customer service, claims handling, and other illegal conduct that directly caused the damages it now seeks to recover.

**THIRD AFFIRMATIVE DEFENSE** (In Pari Delicto)

15

Innovative's claims are barred by the doctrine of in pari delicto because, to the extent any wrongdoing occurred (which is denied), Innovative was an active and knowing participant in such wrongdoing and cannot now seek to recover damages resulting from its own illegal conduct.

**FOURTH AFFIRMATIVE DEFENSE** (Comparative/Contributory Fault)

Any damages allegedly suffered by Innovative were caused in whole or in substantial part by Innovative's own actions, omissions, negligence, and illegal conduct, including but not limited to violations of ERISA, fraudulent business practices, inadequate management oversight, and systemic compliance failures. Under applicable principles of comparative fault, any recovery by Innovative should be barred or substantially reduced.

**FIFTH AFFIRMATIVE DEFENSE** (No Fiduciary Duty)

Motiwalla did not owe any fiduciary duties to Innovative beyond those inherent in his role as an employee or independent contractor. The relationship between Motiwalla and Innovative did not give rise to a fiduciary relationship, and therefore Count III (Breach of Fiduciary Duty) fails as a matter of law.

**SIXTH AFFIRMATIVE DEFENSE** (Business Judgment Rule)

To the extent Innovative seeks to challenge business decisions made by Motiwalla in his capacity as COO, such decisions were made in good faith, with reasonable care, and in what Motiwalla reasonably believed to be Innovative's best interests. Such decisions are protected by the business judgment rule and cannot form the basis for liability.

**SEVENTH AFFIRMATIVE DEFENSE** (Statute of Frauds - Guaranty)

The guaranty provision in the Recruiter Agreement is unenforceable under the statute of frauds. The guaranty does not satisfy the requirements for an enforceable guaranty under applicable law, including but not limited to: (a) lack of separate consideration flowing to Motiwalla as guarantor;

(b) failure to clearly and unambiguously set forth the scope and terms of the guaranty; (c) failure to separately memorialize the guaranty in a manner that satisfies statutory requirements; and (d) failure to satisfy other statutory requirements for enforceability of guaranty agreements.

**EIGHTH AFFIRMATIVE DEFENSE** (Lack of Consideration - Guaranty)

The guaranty provision in the Recruiter Agreement is unenforceable due to lack of consideration. No separate or adequate consideration was provided to Motiwalla in exchange for his agreement to personally guarantee the obligations of Reia & Co, a separate legal entity. The recital that Motiwalla signed the guaranty "to induce" Innovative to enter into the agreement does not constitute adequate consideration where, as here, the guaranty was signed simultaneously with the underlying agreement and no separate benefit flowed to Motiwalla. Additionally, the consideration allegedly supporting the underlying Recruiter Agreement flowed entirely to Reia & Co, not to Motiwalla personally.

**NINTH AFFIRMATIVE DEFENSE** (Fraud, Duress, and Undue Influence - Guaranty)

The guaranty provision in the Recruiter Agreement was procured through fraud, duress, and undue influence. Motiwalla was induced to sign the guaranty through misrepresentations by Innovative regarding: (a) the nature and risks of the agreement; (b) the likelihood and amount of any potential debit balances; (c) Innovative's business practices and compliance with law; (d) the viability of Innovative's business model; and (e) other material terms. Additionally, Innovative exerted undue influence over Motiwalla based on the employment relationship and power dynamic between them, including threats regarding his employment and livelihood. The guaranty is therefore unenforceable.

**TENTH AFFIRMATIVE DEFENSE** (Unconscionability - Guaranty and Agreement Terms)

17

The guaranty provision and other terms of the Recruiter Agreement are unconscionable and unenforceable. The terms are procedurally unconscionable due to: (a) unequal bargaining power; (b) lack of opportunity to negotiate; (c) adhesion contract terms; (d) Innovative's superior knowledge and resources; and (e) Motiwalla's lack of meaningful choice. The terms are substantively unconscionable due to one-sided and oppressive provisions, including: (i) unlimited personal liability for Motiwalla for a corporate entity's obligations; (ii) unilateral control by Innovative over debit balance calculations; (iii) extremely short time periods (30 days) for challenging account statements; (iv) aggregation provisions that allow Innovative to charge one entity's obligations against another; (v) broad discretion for Innovative to terminate "for cause" without meaningful standards; (vi) limitation of damages provisions that protect Innovative but not Motiwalla; (vii) one-sided attorneys' fees provisions; and (viii) provisions allowing Innovative to unilaterally modify terms.

**ELEVENTH AFFIRMATIVE DEFENSE** (Material Breach by Innovative)

Innovative materially breached the Recruiter Agreement, which excuses any alleged non-performance by Reia & Co and Motiwalla and bars Innovative's breach of contract claims. Innovative's material breaches include, but are not limited to: (a) engaging in ERISA violations and illegal business practices that caused the high cancellation rates and customer complaints; (b) failing to provide adequate support, training, and resources as required by the agreement; (c) improperly calculating debit balances in violation of agreement terms; (d) failing to provide accurate, complete, and timely account statements; (e) improperly aggregating obligations from separate entities in violation of agreement terms and the parties' understanding; (f) wrongfully terminating the agreement without proper cause; (g) failing to pay commissions and incentives

18

properly owed; (h) unilaterally modifying agreement terms without consent; and (i) breaching implied covenants of good faith and fair dealing.

**TWELFTH AFFIRMATIVE DEFENSE** (Failure of Consideration)

There has been a total or partial failure of consideration for the Recruiter Agreement and the guaranty provision. Innovative failed to provide the benefits and support that were promised and that formed the basis for the agreement, including: (a) adequate training and support; (b) marketing materials and resources; (c) compliant business practices; (d) a viable and sustainable business model; (e) products and services that would be delivered to enrolled members; (f) customer service infrastructure; (g) compliance oversight and guidance; and (h) other material benefits. This failure of consideration bars or substantially reduces Innovative's ability to recover under the agreement.

**THIRTEENTH AFFIRMATIVE DEFENSE** (Improper Calculation of Alleged Debit Balance)

The alleged debit balance of $1,215,880.83 is grossly inflated, improperly calculated, and not owed. Innovative's calculation of the alleged debit balance violates the terms of the Recruiter Agreement and is based on: (a) improper aggregation of obligations from separate legal entities (Reia & Co and Atropine owned by completely different people); (b) failure to properly credit payments, commissions, and incentives earned and owed; (c) inflated and incorrect persistency calculations; (d) inclusion of amounts not properly owed under the agreement terms; (e) failure to account for Innovative's own breaches and failures that caused high cancellation rates; (f) application of incorrect formulas and methodologies inconsistent with the agreement and industry standards; (g) inclusion of chargebacks and cancellations caused by Innovative's illegal conduct; and (h) double-counting and other mathematical errors. Until a proper accounting is conducted, no amounts can be determined to be owed.

**FOURTEENTH AFFIRMATIVE DEFENSE** (No Wrongful Termination for Cause)

Innovative did not have proper cause to terminate the Recruiter Agreement. The alleged breaches cited by Innovative as grounds for termination for cause were either: (a) not breaches at all; (b) caused by Innovative's own actions and material breaches; (c) immaterial and not sufficient to constitute cause under the agreement; (d) waived by Innovative's conduct; or (e) based on improperly calculated persistency rates. Because the termination was not properly for cause, the provisions regarding immediate payment of debit balances, acceleration of obligations, and forfeiture of rights do not apply.

**FIFTEENTH AFFIRMATIVE DEFENSE** (Waiver)

Innovative waived its right to assert the claims in the Counterclaim through its conduct, including but not limited to: (a) accepting performance under the Recruiter Agreement for an extended period despite knowledge of alleged issues; (b) failing to timely object to or terminate the agreement despite alleged knowledge of problems; (c) continuing to pay incentives and advances despite alleged knowledge of persistency issues; (d) failing to enforce agreement terms strictly or at all; (e) making representations and engaging in conduct inconsistent with the claims now asserted; (f) accepting late payments or modified performance; (g) failing to provide timely notice of alleged defaults; and (h) acquiescing in the alleged conduct now challenged.

**SIXTEENTH AFFIRMATIVE DEFENSE** (Estoppel)

Innovative is estopped from asserting the claims in the Counterclaim based on its prior conduct, representations, and course of dealing. Innovative made representations, through words and conduct, that it would not enforce certain terms of the Recruiter Agreement or would calculate debit balances in a certain manner. Motiwalla and Reia & Co reasonably relied on Innovative's conduct and representations to their detriment by continuing performance, accepting advances,

20

and making business decisions based on Innovative's representations. Innovative should be estopped from now taking inconsistent positions.

**SEVENTEENTH AFFIRMATIVE DEFENSE** (Laches)

Innovative's claims are barred by the doctrine of laches. Innovative unreasonably delayed in asserting its claims despite having knowledge of the facts underlying those claims for months or years. Motiwalla has been prejudiced by this delay through loss of evidence, fading memories, changes in circumstances, and inability to take protective action. Innovative should be barred from pursuing these stale claims.

**EIGHTEENTH AFFIRMATIVE DEFENSE** (Statute of Limitations)

To the extent any claims accrued prior to the applicable limitations period, such claims are barred by the applicable statute of limitations under the law of the controlling jurisdiction.

**NINETEENTH AFFIRMATIVE DEFENSE** (Lack of Causation)

Innovative's alleged damages were not caused by any actions or omissions of Motiwalla. To the extent Innovative suffered damages, such damages were caused by: (a) Innovative's own illegal business practices and ERISA violations; (b) systemic problems with Innovative's business model; (c) deceptive customer service, retention and claims handling practices employed throughout Innovative's organization; (d) decisions and actions by Innovative's principals and management, including Shokry, Sutton, and Pagnanelli; (e) market conditions and competitive factors; (f) regulatory actions caused by Innovative's own misconduct; (g) inadequate capitalization and business planning; (h) processor decisions based on Innovative's chargeback rates; and (i) other intervening and superseding causes. There is no causal connection between Motiwalla's conduct and any damages allegedly suffered by Innovative.

**TWENTIETH AFFIRMATIVE DEFENSE** (Speculative and Uncertain Damages)

21

The damages alleged by Innovative are speculative, uncertain, not proven with reasonable certainty, and not recoverable as a matter of law. Innovative has failed to establish the amount of any actual damages with the specificity and certainty required by law. The alleged debit balance is based on assumptions, projections, and calculations that are unreliable and not proven.

**TWENTY-FIRST AFFIRMATIVE DEFENSE** (Failure to Mitigate Damages)

Innovative failed to mitigate its alleged damages. Innovative had a duty to take reasonable steps to minimize its losses but failed to do so, including by: (a) failing to timely address underlying business problems causing customer complaints and cancellations; (b) failing to implement proper compliance measures; (c) continuing illegal business practices; (d) failing to provide adequate support to recruiters; and (e) failing to take other reasonable mitigation measures. Any damages allegedly suffered by Innovative should be reduced or barred due to Innovative's failure to mitigate.

**TWENTY-SECOND AFFIRMATIVE DEFENSE** (Set-Off and Recoupment)

To the extent any amounts are determined to be owed by Motiwalla (which is denied), Motiwalla is entitled to set-off and recoupment for: (a) wages, salary, and compensation owed by Innovative to Motiwalla; (b) unreimbursed business expenses; (c) incentives, commissions, and payments improperly withheld from Reia & Co; (d) damages suffered by Motiwalla as a result of Innovative's breaches and wrongful conduct, including wrongful termination; (e) unpaid bonuses and benefits; (f) improper deductions and chargebacks; and (g) other amounts owed by Innovative to Motiwalla.

**TWENTY-THIRD AFFIRMATIVE DEFENSE** (No Fraud - Lack of Elements)

Count I (Fraud) fails because Innovative cannot establish one or more essential elements of fraud, including: (a) a material misrepresentation or omission; (b) knowledge of falsity or reckless disregard for the truth; (c) intent that Innovative rely on the alleged misrepresentation; (d)

22

justifiable and reasonable reliance; and/or (e) damages proximately caused by the alleged misrepresentation. Each element must be proven with particularity and clear and convincing evidence, and Innovative cannot meet this burden.

**TWENTY-FOURTH AFFIRMATIVE DEFENSE** (No Conversion - Lack of Elements)

Count II (Conversion) fails because Innovative cannot establish one or more essential elements of conversion, including: (a) ownership or right to possess specific, identifiable funds or property; (b) wrongful exercise of dominion and control by Motiwalla over such specific property; (c) unauthorized and wrongful possession or control; and/or (d) damages. Innovative cannot identify specific funds or property that were allegedly converted with the specificity required. Any operational decisions made by Motiwalla regarding transaction processing were within his authority as COO and do not constitute conversion.

**TWENTY-FIFTH AFFIRMATIVE DEFENSE** (Economic Loss Rule)

To the extent Innovative's tort claims (fraud, conversion, breach of fiduciary duty) seek to recover purely economic losses arising from the Recruiter Agreement or the employment relationship, such claims are barred by the economic loss rule. Innovative's remedy, if any, lies in contract, not tort. The economic loss rule bars tort recovery where the losses are purely economic and arise from contractual relationships.

**TWENTY-SIXTH AFFIRMATIVE DEFENSE** (Good Faith)

Motiwalla acted at all times in good faith and in what he reasonably believed to be Innovative's best interests. Any decisions or actions taken by Motiwalla in his capacity as COO were made in good faith, with reasonable care, and based on the information available at the time. Good faith is a complete defense to claims of fraud, conversion, and breach of fiduciary duty.

**TWENTY-SEVENTH AFFIRMATIVE DEFENSE** (Lack of Scienter)

23

Innovative's fraud claim fails for lack of scienter. Motiwalla did not act with the requisite intent to defraud or knowledge of falsity. All statements and representations made by Motiwalla were made in good faith and based on his honest belief in their truth at the time they were made. Motiwalla did not act with intent to deceive or reckless disregard for the truth.

**TWENTY-EIGHTH AFFIRMATIVE DEFENSE** (Authorization and Ratification)

To the extent Innovative challenges any actions taken by Motiwalla in his capacity as COO, such actions were: (a) within Motiwalla's authority as COO; (b) expressly or impliedly authorized by Innovative's management and ownership; (c) ratified by Innovative's management through knowledge and acquiescence; (d) consistent with industry standards and reasonable business judgment; and/or (e) directed or approved by Innovative principals. Innovative cannot now claim that authorized and ratified actions constitute wrongdoing.

**TWENTY-NINTH AFFIRMATIVE DEFENSE** (Retaliatory Counterclaim)

The Counterclaim was filed in bad faith as retaliation against Motiwalla for: (a) filing the underlying lawsuit alleging ERISA violations and whistleblower retaliation; (b) reporting Innovative's illegal conduct to regulatory authorities; (c) refusing to participate in Innovative's ERISA violations and fraudulent business practices; (d) raising internal complaints about compliance issues; and (e) exercising his rights under state and federal whistleblower protection laws. The Counterclaim is an improper attempt to intimidate and punish a whistleblower and should be dismissed.

**THIRTIETH AFFIRMATIVE DEFENSE** (Preemption by ERISA)

To the extent Innovative's state law claims relate to ERISA plans, attempt to enforce rights under the Recruiter Agreement that involve ERISA-covered benefits, or seek to recover damages based on activities involving ERISA plans, such claims are preempted by ERISA pursuant to 29

U.S.C. § 1144. ERISA's broad preemption provision bars state law claims that "relate to" ERISA plans.

**THIRTY-FIRST AFFIRMATIVE DEFENSE** (No Privity / Separate Corporate Identity)

To the extent Innovative seeks to hold Motiwalla personally liable for alleged actions taken by Reia & Co, a separate legal entity, such claims fail because Motiwalla and Innovative lacked privity with respect to Reia & Co's obligations. The corporate veil of Reia & Co should be respected, and Motiwalla should not be held personally liable for corporate obligations absent a valid and enforceable guaranty (which is disputed and denied for the reasons set forth in other affirmative defenses). Reia & Co is a separate legal entity with its own rights and obligations distinct from Motiwalla personally.

**THIRTY-SECOND AFFIRMATIVE DEFENSE** (Contract Interpretation and Ambiguity)

The Recruiter Agreement is ambiguous in material respects and should be construed against Innovative as the drafter under the doctrine of contra proferentem. Under applicable principles of contract interpretation, ambiguities should be resolved in favor of Motiwalla, and the agreement should be interpreted in the manner most consistent with fairness and equity. Material ambiguities exist regarding: (a) the calculation of debit balances; (b) the scope of the guaranty; (c) the aggregation provisions; (d) what constitutes "cause" for termination; (e) persistency calculation methodologies; and (f) other material terms.

**THIRTY-THIRD AFFIRMATIVE DEFENSE** (Improper Aggregation Across Separate Entities)

The Recruiter Agreement does not authorize Innovative to aggregate obligations from Atropine (a completely separate legal entity) and charge them against Reia & Co or Motiwalla. To the extent Innovative's calculation of the alleged debit balance includes obligations allegedly owed by

Atropine or any other separate entity, such aggregation: (a) violates the terms of the Recruiter Agreement; (b) violates principles of corporate separateness; (c) is unconscionable; (d) violates public policy; and (e) is unenforceable. Each entity is a separate legal entity with separate obligations, and one entity's alleged debts cannot be charged to another absent express authorization and proper legal basis.

**THIRTY-FOURTH AFFIRMATIVE DEFENSE** (Account Stated Doctrine Inapplicable)

To the extent Innovative claims that Motiwalla or Reia & Co failed to timely object to account statements and therefore are bound by such statements under the account stated doctrine or similar theories, such claims fail because: (a) the account statements provided were inaccurate, incomplete, and did not reflect a true accounting; (b) Motiwalla and Reia & Co did object to inaccuracies when discovered; (c) the 30-day objection period in the Recruiter Agreement is unconscionable, unreasonable, and unenforceable; (d) Innovative's conduct prevented timely review and objection to account statements; (e) the statements contained unilateral calculations and assertions not agreed to by Motiwalla or Reia & Co; and (f) the account stated doctrine does not apply where there is fraud, mistake, or disputed accounting.

**THIRTY-FIFTH AFFIRMATIVE DEFENSE** (Superseding and Intervening Causes)

To the extent Innovative suffered damages, such damages were caused by superseding and intervening causes beyond Motiwalla's control, including: (a) regulatory actions by state departments of insurance and other agencies; (b) adverse market conditions; (c) decisions by third-party processors based on Innovative's own conduct; (d) actions by other Innovative employees, sales rooms, and recruiters; (e) Innovative's own systemic failures; (f) customer complaints and cancellations caused by Innovative's practices; (g) competitive pressures; and (h) decisions by

26

Innovative's ownership and management. These superseding and intervening causes break the chain of causation and bar Innovative's claims.

**THIRTY-SIXTH AFFIRMATIVE DEFENSE** (Impossibility, Impracticability, and Frustration of Purpose)

To the extent Motiwalla or Reia & Co allegedly failed to perform any obligations under the Recruiter Agreement, such non-performance was excused by: (a) impossibility of performance resulting from Innovative's illegal conduct and regulatory actions; (b) commercial impracticability due to circumstances beyond Motiwalla's and Reia & Co's control; and/or (c) frustration of purpose where Innovative's illegal practices made achievement of the agreement's purpose impossible. Performance was rendered impossible or impracticable by: (i) Innovative's ERISA violations; (ii) Innovative's deceptive customer service, retention and claims handling practices that caused high cancellation rates; (iii) regulatory cease and desist orders; (iv) Innovative's breaches; and (v) other circumstances beyond Motiwalla's and Reia & Co's control.

**THIRTY-SEVENTH AFFIRMATIVE DEFENSE** (Illegality and Public Policy)

To the extent the Recruiter Agreement required, contemplated, or was connected with participation in illegal activities, including ERISA violations, fraudulent sales practices, deceptive trade practices, and violations of insurance laws, the agreement is void and unenforceable as against public policy. Innovative cannot enforce an illegal contract or recover damages based on an illegal scheme. Courts will not enforce contracts that are contrary to law or public policy or that require illegal performance.

**THIRTY-EIGHTH AFFIRMATIVE DEFENSE** (Lack of Authority to Bind)

To the extent the Recruiter Agreement or any modifications thereof were signed by someone purporting to act on behalf of Innovative, that person lacked actual or apparent authority to bind

Innovative to the terms asserted in the Counterclaim, and/or exceeded the scope of any authority possessed. Additionally, to the extent Innovative relies on any amendments, modifications, or side agreements, such documents were not properly authorized or executed.

**THIRTY-NINTH AFFIRMATIVE DEFENSE** (Release, Accord and Satisfaction)

Motiwalla has been released from any liability to Innovative through: (a) express or implied releases; (b) settlement agreements or arrangements; (c) accord and satisfaction through performance and acceptance; and/or (d) other discharge of obligations. Any claims asserted in the Counterclaim have been released, satisfied, or discharged and are barred.

**FORTIETH AFFIRMATIVE DEFENSE** (Limitation of Liability Provisions)

The Recruiter Agreement contains provisions limiting Innovative's liability to $50,000 for various breaches and damages. Under principles of equity, fairness, and mutuality of obligation, these limitation of liability provisions should be applied reciprocally to limit any potential liability of Motiwalla or Reia & Co under the agreement to a maximum of $50,000. Innovative cannot enforce unlimited liability provisions against Motiwalla while limiting its own liability to $50,000.

**FORTY-FIRST AFFIRMATIVE DEFENSE** (Judicial Estoppel)

Innovative is judicially estopped from asserting positions in the Counterclaim that are inconsistent with positions it has taken in: (a) other proceedings or litigation; (b) regulatory filings or submissions; (c) its Answer to the Complaint in this action; (d) communications with regulators or government agencies; and/or (e) other sworn statements or legal positions. Innovative should not be permitted to take inconsistent positions for strategic advantage.

**FORTY-SECOND AFFIRMATIVE DEFENSE** (No Damages or Nominal Damages Only)

Innovative has suffered no actual damages as a result of any actions or omissions by Motiwalla, or alternatively, any damages suffered are nominal only. Innovative cannot prove actual damages

28

with reasonable certainty, and its damage claims are speculative, inflated, unsupported by evidence, based on improper calculations, and not recoverable as a matter of law.

**FORTY-THIRD AFFIRMATIVE DEFENSE** (Condition Precedent)

Innovative's right to recover under the Recruiter Agreement, if any, was subject to conditions precedent that have not been satisfied or have been excused. These conditions precedent include, but are not limited to: (a) Innovative's own full performance under the agreement; (b) provision of proper notice of any alleged default in strict compliance with agreement terms; (c) opportunity to cure any alleged default; (d) proper calculation and documentation of any alleged debit balance; (e) good faith performance by Innovative; and (f) other conditions that have not been satisfied.

**FORTY-FOURTH AFFIRMATIVE DEFENSE** (Mistake)

The Recruiter Agreement, including the guaranty provision, was entered into based on mutual or unilateral mistake of fact regarding material terms and circumstances, including: (a) the nature of Innovative's business practices and legal compliance; (b) the viability and sustainability of Innovative's business model; (c) the likelihood and magnitude of potential debit balances; (d) cancellation rates and persistency expectations; (e) market conditions; and (f) other material facts. Due to such mistake, the agreement or the guaranty provision should be rescinded or reformed.

**FORTY-FIFTH AFFIRMATIVE DEFENSE** (Lack of Mutuality)

The Recruiter Agreement lacks mutuality of obligation and is therefore unenforceable or should be reformed. The agreement imposes substantial obligations and unlimited liability on Motiwalla while providing limited corresponding obligations on Innovative. Innovative retained unilateral discretion to: (a) calculate debit balances; (b) determine what constitutes cause for termination; (c) modify terms; (d) aggregate obligations from different entities; (e) determine

29

persistency rates; and (f) exercise other one-sided powers. This lack of mutuality renders the agreement unenforceable.

**FORTY-SIXTH AFFIRMATIVE DEFENSE** (Penalty Clause)

To the extent the debit balance provisions, aggregation provisions, or other financial terms of the Recruiter Agreement operate to impose liability on Motiwalla that is grossly disproportionate to any actual damages suffered by Innovative, such provisions constitute unenforceable penalty clauses. Penalty clauses are void and unenforceable under applicable law. The provisions must be reasonably related to anticipated or actual damages and cannot operate as a penalty.

**FORTY-SEVENTH AFFIRMATIVE DEFENSE** (Breach of Implied Covenant of Good Faith and Fair Dealing)

Innovative breached the implied covenant of good faith and fair dealing inherent in the Recruiter Agreement by: (a) engaging in illegal business practices; (b) calculating debit balances in bad faith; (c) improperly aggregating obligations from separate entities; (d) terminating the agreement in bad faith; (e) failing to provide adequate support; (f) exercising discretionary provisions in bad faith and in a manner designed to harm Motiwalla and Reia & Co; and (g) other bad faith conduct. This breach excuses performance by Motiwalla and Reia & Co and bars Innovative's claims.

**FORTY-EIGHTH AFFIRMATIVE DEFENSE** (Failure to Provide Adequate Notice)

Innovative failed to provide adequate, timely, or proper notice of: (a) alleged defaults; (b) termination of the agreement; (c) calculation of alleged debit balances; (d) opportunity to cure; and (e) other matters required by the agreement and applicable law. This failure to provide proper notice bars or limits Innovative's ability to recover under the agreement.

**FORTY-NINTH AFFIRMATIVE DEFENSE** (No Joint and Several Liability)

30

To the extent Innovative seeks to hold Motiwalla jointly and severally liable with Reia & Co, such joint and several liability is improper, unenforceable, and not supported by the terms of the agreement or applicable law. Motiwalla's alleged guaranty obligations, if any (which is denied), are limited and secondary to Reia & Co's primary obligations and are subject to all defenses available to Reia & Co.

**FIFTIETH AFFIRMATIVE DEFENSE** (Suretyship Defenses)

To the extent Motiwalla signed a guaranty, he is entitled to all defenses available to a surety under applicable law, including but not limited to: (a) discharge due to material alteration of the underlying obligation without consent; (b) discharge due to extension of time for performance without consent; (c) discharge due to modification of the principal obligation without consent; (d) discharge due to impairment of collateral or security; (e) discharge due to creditor's failure to pursue remedies against the principal obligor; (f) all defenses available to the principal obligor (Reia & Co); and (g) other suretyship defenses. Any of these defenses discharge or limit Motiwalla's liability under the alleged guaranty.

**FIFTY-FIRST AFFIRMATIVE DEFENSE** (Void for Vagueness and Indefiniteness)

Material provisions of the Recruiter Agreement are void for vagueness and indefiniteness, including: (a) the definition and standards for "cause" for termination; (b) the methodology for calculating persistency rates and debit balances; (c) the scope and application of aggregation provisions; (d) performance standards and expectations; (e) the scope of the guaranty; and (f) other material terms. Where contract terms are too vague or indefinite to be enforceable, they cannot form the basis for liability.

**FIFTY-SECOND AFFIRMATIVE DEFENSE** (Rescission)

Motiwalla is entitled to rescission of the Recruiter Agreement and the guaranty provision based on: (a) fraud in the inducement; (b) mutual or unilateral mistake; (c) failure of consideration; (d) material breach by Innovative; (e) illegality; (f) unconscionability; and/or (g) other grounds for rescission. Upon rescission, the parties should be restored to their pre-contract positions, and any alleged debit balance would be void.

**FIFTY-THIRD AFFIRMATIVE DEFENSE** (Reformation)

To the extent the Recruiter Agreement or guaranty provision is enforceable, it should be reformed by the Court to: (a) eliminate unconscionable provisions; (b) correct improper aggregation provisions; (c) limit guaranty liability to reasonable amounts; (d) correct debit balance calculation methodologies; (e) impose reasonable time limits and notice requirements; and (f) otherwise make the agreement fair and equitable. The agreement does not reflect the true intent of the parties and should be reformed.

**FIFTY-FOURTH AFFIRMATIVE DEFENSE** (Election of Remedies)

To the extent Innovative has pursued or elected certain remedies, either in this action or otherwise, such election bars Innovative from pursuing inconsistent remedies. Innovative cannot simultaneously pursue contract and tort remedies for the same alleged conduct, cannot seek both specific performance and damages, and cannot pursue other inconsistent remedies.

**FIFTY-FIFTH AFFIRMATIVE DEFENSE** (No Meeting of the Minds)

There was no meeting of the minds between the parties regarding material terms of the Recruiter Agreement and the guaranty provision, including: (a) the scope of the guaranty; (b) the methodology for calculating debit balances; (c) the application of aggregation provisions to separate entities; (d) persistency rate calculations; (e) what constitutes cause for termination; and

(f) other material terms. Without a meeting of the minds on material terms, no enforceable contract exists.

**FIFTY-SIXTH AFFIRMATIVE DEFENSE** (Cy Pres or Equitable Adjustment)

To the extent any amounts are determined to be owed (which is denied), the Court should apply principles of equity to reduce, adjust, or limit such amounts based on: (a) Innovative's own fault and contributory conduct; (b) the unconscionability of imposing unlimited liability; (c) the disproportion between alleged liability and actual damages; (d) Innovative's unclean hands; (e) equitable considerations of fairness and justice; and (f) other equitable factors. The Court has inherent equitable power to adjust claims to achieve a just result.

**FIFTY-SEVENTH AFFIRMATIVE DEFENSE** (CPA Supersedes All Prior Agreements)

Motiwalla asserts that the Commission Purchase Agreement ("CPA"), executed on or about July 24, 2023, by Innovative Partners, the Producer (Reia & Co.), and Advance Co. (Advanced Plus, LLC), may govern and supersede all prior agreements relating to the commissions and receivables at issue in this litigation. The CPA contains a clear conflict and supremacy clause that establishes it as the controlling document when inconsistent with the prior Producer/Recruiter Agreement. It expressly provides that all rights purchased under the CPA supersede any rights retained by Innovative, thereby limiting Innovative's ability to rely on the earlier agreement. The CPA includes an express waiver of setoff and release of any security interest held by Innovative while the Producer remains obligated to Advance Co., barring Innovative from withholding or deducting payments relating to the purchased receivables. The CPA mandates direct payment of receivables to Advance Co. and requires that all funds due to Producer be applied to satisfy Advance Co.'s purchased interests before any proceeds are paid to Producer, effectively reducing any claimed balance owed to Innovative. The CPA's merger and integration clause confirms that

33

it constitutes the complete and exclusive agreement of the parties and supersedes all prior oral or written agreements, reinforcing its supremacy over the Producer/Recruiter Agreement. The CPA designates Advance Co. as a third-party beneficiary with authority to enforce the agreement against Innovative and expressly assigns ownership of the purchased commission streams to Advance Co. in perpetuity while the related policies remain active, leaving no residual right for Innovative to claim those revenues. Motiwalla pleads that Advance Co. funded and implemented the CPA as contemplated, that Innovative accepted and processed payments consistent with its terms, and that the agreement contains no personal guaranty by any individual. Collectively, these provisions demonstrate that the CPA supersedes and governs the parties' relationship with respect to the commissions and receivables at issue. Therefore, Innovative's claims that rely on inconsistent provisions of the prior Producer/Recruiter Agreement are barred, waived, and superseded by the express contractual terms of the CPA.

**RESERVATION OF RIGHTS**

Motiwalla expressly reserves the right to assert additional affirmative defenses as may be revealed through discovery, further investigation, or legal research. Motiwalla does not intend to waive any defenses by failing to assert them in this initial Answer and may seek leave to amend to add additional defenses as appropriate. Motiwalla also reserves all rights regarding the assertion of counterclaims, cross-claims, or third-party claims as may be appropriate following further investigation and discovery.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Counter-Defendant ARMAN MOTIWALLA respectfully requests that this Court:

    1.  Dismiss the Counterclaim in its entirety with prejudice;

2.  Enter judgment in favor of Motiwalla and against Innovative on all counts of the Counterclaim;

3.  Award Motiwalla his costs, expenses, and reasonable attorneys' fees incurred in defending against the Counterclaim;

4.  Grant such equitable relief as may be appropriate, including but not limited to rescission of the Recruiter Agreement, reformation of unconscionable terms, declaratory judgment regarding the parties' rights and obligations, and an accounting;

5.  Award Motiwalla such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Counter-Defendant Motiwalla hereby demands a trial by jury on all issues so triable in this action.

Respectfully submitted,

Dated: November 3, 2025

**/s/Benjamin H. Yormak**
Benjamin H. Yormak
Florida Bar Number 71272
Lead Counsel for Plaintiff
Yormak Employment & Disability Law
27200 Riverview Center Blvd, Suite 109
Bonita Springs, Florida 34134
Telephone: (239) 985-9691
Fax: (239) 288-2534
Email: byormak@yormaklaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 3, 2025, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants: None.

<u>**s/ Benjamin H. Yormak**</u>
Benjamin H. Yormak