**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
CASE NO: 0:25-cv-61290-LEIBOWITZ

ARMAN MOTIWALLA, an individual,
     Plaintiff, Counter-Defendant

     v.

INNOVATIVE PARTNERS L.P., a Texas
Limited partnership,
     Defendant/Counterclaimant
     v.

REIA & CO LLC, a Delaware limited liability company,
Additional Counter-Defendant

_____/

**COUNTER-DEFENDANT REIA & CO LLC'S ANSWER AND AFFIRMATIVE
DEFENSES TO COUNTERCLAIM**

Additional Counter-Defendant REIA & CO LLC ("Reia & Co"), by counsel, hereby files

its Answer and Affirmative Defenses to Counter-Plaintiff INNOVATIVE PARTNERS L.P.'s

Counterclaim [DE 26] (the "Counterclaim") and states as follows:

**ADOPTION BY REFERENCE**

Reia & Co hereby adopts by reference Counter-Defendant Arman Motiwalla's responses to

paragraphs 1 through 57 of the Counterclaim as set forth in Motiwalla's Answer to Counterclaim

[DE 32], as if fully set forth herein, to the extent such responses address allegations applicable to Reia & Co.

Reia & Co further adopts by reference Motiwalla's responses to Count II (Conversion) as set forth in Motiwalla's Answer to Counterclaim [DE 32], paragraphs 64 through 69, as if fully set forth herein.

**ANSWER TO COUNTERCLAIM**

**I. INTRODUCTION**

**1.** Denied. The allegations in this paragraph consist of characterizations, conclusions, inflammatory rhetoric, and legal conclusions to which no response is required. To the extent a response is deemed necessary, Reia & Co denies each and every allegation contained therein.

**2.** Denied. The allegations in this paragraph consist of characterizations, conclusions, inflammatory rhetoric, and legal conclusions to which no response is required. To the extent a response is deemed necessary, Reia & Co denies each and every allegation contained therein. Reia & Co specifically denies that it abused any position of trust, engaged in fraud, conversion, or breaches of contract, or caused Innovative any losses.

**II. PARTIES, JURISDICTION, AND VENUE**

**3.** Reia & Co lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph concerning Motiwalla and therefore denies the same.

**4.** Reia & Co lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

**5.** Reia & Co is a Delaware limited liability company. Reia & Co lacks sufficient knowledge regarding the identity of its members and their citizenship and therefore denies the remaining allegations. This paragraph also contains legal conclusions to which no response is required. To the extent a response is necessary, Reia & Co denies that it is properly joined as a counter-defendant.

**6.** This paragraph contains legal conclusions to which no response is required. To the extent a response is deemed necessary, Reia & Co denies that this Court has jurisdiction over the Counterclaim as to it.

**7.** This paragraph contains legal conclusions to which no response is required. To the extent a response is deemed necessary, the allegations are denied.

**8.** This paragraph contains legal conclusions to which no response is required. To the extent a response is deemed necessary, the allegations are denied.

**9.** Reia & Co lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

**10.** This paragraph contains legal conclusions to which no response is required. To the extent a response is deemed necessary, the allegations are denied.

**III. BACKGROUND**

**11.** Reia & Co lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

**12.** Reia & Co lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

**13.** Reia & Co lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

**14.** Reia & Co admits that Innovative offered advance incentive payments to recruiters. Reia & Co lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies the same.

**15.** Reia & Co lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

**A. The Hiring of Motiwalla**

**16-21.** Reia & Co lacks sufficient knowledge or information to form a belief as to the truth of the allegations in these paragraphs concerning Motiwalla's hiring and relationship with Innovative and therefore denies the same.

**B. Motiwalla Botched Innovative's Credit Card Processing**

**22.** Reia & Co lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph concerning Motiwalla's role and performance and therefore denies

the same. To the extent this paragraph suggests that Reia & Co bears responsibility for Innovative's processing problems, such allegations are specifically denied. Any credit card processing issues experienced by Innovative were the result of systemic problems with Innovative's business model, including its engagement in illegal and fraudulent practices, violations of ERISA, high chargeback rates due to widespread customer dissatisfaction caused by deceptive product design, customer service handling and retention practices, claims handling, and Innovative management's own failures.

**23-33.** Reia & Co lacks sufficient knowledge or information to form a belief as to the truth of the allegations in these paragraphs concerning Innovative's credit card processing, Motiwalla's actions, and processor relationships and therefore denies the same. To the extent these paragraphs suggest that Reia & Co bears responsibility for Innovative's processing difficulties or regulatory problems, such allegations are specifically denied. Any such difficulties were caused by Innovative's own illegal business practices, ERISA violations, customer service and retention tactics, and systemic failures in its business model.

**C. Motiwalla's Fraudulent Conduct is Brought to Light**

**34.** Denied. The allegations in this paragraph are false and defamatory. Reia & Co did not engage in any fraudulent activities. To the extent operational decisions were made regarding transaction processing, such decisions were made in good faith and consistent with industry practices.

**35-38.** Reia & Co lacks sufficient knowledge or information to form a belief as to the truth of the allegations in these paragraphs concerning Motiwalla's actions, consultants hired by Innovative,

or Motiwalla's termination and therefore denies the same. To the extent these paragraphs make allegations about Reia & Co's intent, knowledge, or conduct, such allegations are denied as false.

**D. Reia & Co's Breach of Recruiter Agreement and Debit Balance**

**39.** Denied. The Recruiter Agreement attached at Doc. 26-1 is unsigned and is thus not a true and correct copy. Reia & Co admits that a recruiter agreement was entered into and that Innovative sent a letter dated May 29, 2025. Reia & Co denies that any amounts are owed under the Recruiter Agreement for the reasons set forth in its affirmative defenses below. Reia & Co specifically denies that the alleged debit balance is accurate, properly calculated, or owed.

**40.** Reia & Co admits that the Recruiter Agreement provided for incentive advances and that Reia & Co received such advances. The remaining allegations, including the calculation and amount of any alleged debit balance, are denied. Reia & Co specifically denies that the alleged debit balance of $1,215,880.83 is accurate or owed for the reasons set forth in its affirmative defenses below.

**41.** Reia & Co admits that the Recruiter Agreement contained provisions regarding incentive credits and debit balances. Reia & Co denies that any amounts are currently owed or that the alleged debit balance has been properly calculated.

**42.** Reia & Co admits that the Recruiter Agreement contained certain provisions regarding aggregation of advances and credits. Reia & Co denies that Innovative has properly applied these provisions or that any amounts are owed.

**43.** Denied. The allegations in this paragraph, including the assertion that cancellation rates should not have exceeded 10% on a month-over-month basis under the circumstances present here, are denied. The high cancellation rates experienced by Reia & Co and other recruiters were caused by Innovative's systemic problems, including deceptive product design, retention and claims handling practices, ERISA violations, poor product quality, inadequate customer service, and Innovative's failure to deliver promised services to members.

**44.** Denied. High cancellation rates throughout Innovative's sales organization were indicative of Innovative's systemic business failures and illegal practices, not incompetence or fraud on the part of individual recruiters.

**45.** Reia & Co admits that the Recruiter Agreement contained provisions regarding persistency rates. Reia & Co denies that any breach occurred or that any amounts are owed.

**46.** Denied. Reia & Co specifically denies that the alleged debit balance of $1,215,880.83 is accurate, properly calculated, or owed. The alleged debit balance is inflated, improperly calculated, and not owed for the reasons set forth in Reia & Co's affirmative defenses below.

**47.** Denied. Reia & Co denies that the Recruiter Agreement was properly terminated for cause and denies that any debit balance is owed.

**48-49.** Reia & Co lacks sufficient knowledge or information to form a belief as to the truth of the allegations in these paragraphs concerning the personal guaranty provisions as they relate to Motiwalla individually and therefore denies the same.

**E. Motiwalla Causes and Hides DOI Complaints from Innovative**

**50-57.** Reia & Co lacks sufficient knowledge or information to form a belief as to the truth of the allegations in these paragraphs concerning DOI complaints, Motiwalla's actions, Nu Life Health LLC, or legal fees and therefore denies the same. To the extent these paragraphs make allegations about Reia & Co's intent, knowledge, or conduct, such allegations are denied as false.

**COUNT II - CONVERSION (against Motiwalla and Reia & Co)**

**64.** Reia & Co incorporates by reference its responses to paragraphs 1 through 57 above as though fully set forth herein.

**65.** Denied. Innovative did not own or have an immediate right to possess any funds that were allegedly wrongfully diverted. This paragraph contains legal conclusions to which no response is required. To the extent a response is necessary, the allegations are denied.

**66.** Denied. Reia & Co did not receive any incentive payments that were not earned or owed. Any incentive payments received by Reia & Co were earned under the terms of the Recruiter Agreement.

**67.** Reia & Co lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph concerning legal fees and therefore denies the same.

**68.** Denied. Reia & Co did not wrongfully exercise dominion and control over any of Innovative's funds. This paragraph contains legal conclusions to which no response is required. To the extent a response is necessary, the allegations are denied.

**69.** Denied. Reia & Co did not wrongfully deprive Innovative of any funds or cause Innovative to suffer any damages. To the extent Innovative suffered any damages, such damages were caused by Innovative's own actions and illegal business practices. This paragraph contains legal conclusions to which no response is required. To the extent a response is necessary, the allegations are denied.

**COUNT IV - BREACH OF RECRUITER AGREEMENT (against Reia & Co)**

**77.** Reia & Co incorporates by reference its responses to paragraphs 1 through 57 above as though fully set forth herein.

**78.** Reia & Co admits that it entered into a recruiter agreement with Innovative. Reia & Co denies the remaining allegations, including that the agreement attached as Exhibit A (Doc. 26-1) is a true and accurate copy or that the agreement is valid and enforceable as alleged.

**79.** Denied. Reia & Co did not materially breach the Recruiter Agreement. The high cancellation rates were caused by Innovative's systemic failures, illegal business practices, ERISA violations, deceptive customer service handling and retention tactics, and inadequate product quality, not by any breach by Reia & Co.

**80.** Denied. Innovative has not suffered damages as a result of any breach by Reia & Co. To the extent Innovative suffered any damages, such damages were caused by Innovative's own conduct. This paragraph contains legal conclusions to which no response is required. To the extent a response is necessary, the allegations are denied.

**81.** Denied. Innovative is not entitled to recover attorneys' fees or costs from Reia & Co. This paragraph contains legal conclusions to which no response is required. To the extent a response is necessary, the allegations are denied.

**GENERAL DENIAL**

Reia & Co denies each and every allegation in the Counterclaim which is not expressly admitted above.

**AFFIRMATIVE DEFENSES**

Reia & Co asserts the following affirmative defenses to the Counterclaim. In asserting these affirmative defenses, Reia & Co does not admit any wrongdoing or liability, and specifically denies all allegations of wrongdoing or liability.

**FIRST AFFIRMATIVE DEFENSE (Failure to State a Claim)**

The Counterclaim fails to state a claim upon which relief can be granted as to each count asserted against Reia & Co.

**SECOND AFFIRMATIVE DEFENSE (Unclean Hands)**

Innovative's claims are barred by the doctrine of unclean hands because Innovative comes to this Court with unclean hands, having engaged in violations of ERISA, fraudulent business practices,

deceptive product design, customer service handling, retention and claims handling, and other illegal conduct that directly caused the damages it now seeks to recover.

**THIRD AFFIRMATIVE DEFENSE (In Pari Delicto)**

Innovative's claims are barred by the doctrine of in pari delicto because, to the extent any wrongdoing occurred (which is denied), Innovative was an active and knowing participant in such wrongdoing and cannot now seek to recover damages resulting from its own illegal conduct.

**FOURTH AFFIRMATIVE DEFENSE (Comparative/Contributory Fault)**

Any damages allegedly suffered by Innovative were caused in whole or in substantial part by Innovative's own actions, omissions, negligence, and illegal conduct, including but not limited to violations of ERISA, fraudulent business practices, inadequate management oversight, and systemic compliance failures. Under applicable principles of comparative fault, any recovery by Innovative should be barred or substantially reduced.

**FIFTH AFFIRMATIVE DEFENSE (Material Breach by Innovative)**

Innovative materially breached the Recruiter Agreement, which excuses any alleged non-performance by Reia & Co and bars Innovative's breach of contract claims. Innovative's material breaches include, but are not limited to: (a) engaging in ERISA violations and illegal business practices that caused the high cancellation rates and customer complaints; (b) failing to provide adequate support, training, and resources as required by the agreement; (c) improperly

calculating debit balances in violation of agreement terms; (d) failing to provide accurate, complete, and timely account statements; (e) improperly aggregating obligations from separate entities in violation of agreement terms and the parties' understanding; (f) wrongfully terminating the agreement without proper cause; (g) failing to pay commissions and incentives properly owed; (h) unilaterally modifying agreement terms without consent; and (i) breaching implied covenants of good faith and fair dealing.

**SIXTH AFFIRMATIVE DEFENSE (Failure of Consideration)**

There has been a total or partial failure of consideration for the Recruiter Agreement. Innovative failed to provide the benefits and support that were promised and that formed the basis for the agreement, including: (a) adequate training and support; (b) marketing materials and resources; (c) compliant business practices; (d) a viable and sustainable business model; (e) products and services that would be delivered to enrolled members; (f) customer service infrastructure; (g) compliance oversight and guidance; and (h) other material benefits. This failure of consideration bars or substantially reduces Innovative's ability to recover under the agreement.

**SEVENTH AFFIRMATIVE DEFENSE (Improper Calculation of Alleged Debit Balance)**

The alleged debit balance of $1,215,880.83 is grossly inflated, improperly calculated, and not owed. Innovative's calculation of the alleged debit balance violates the terms of the Recruiter Agreement and is based on: (a) improper aggregation of obligations from separate legal entities (Reia & Co and Atropine, which are owned by completely different people); (b) failure to properly credit payments, commissions, and incentives earned and owed; (c) inflated and

incorrect persistency calculations; (d) inclusion of amounts not properly owed under the agreement terms; (e) failure to account for Innovative's own breaches and failures that caused high cancellation rates; (f) application of incorrect formulas and methodologies inconsistent with the agreement and industry standards; (g) inclusion of chargebacks and cancellations caused by Innovative's illegal conduct; and (h) double-counting and other mathematical errors. Until a proper accounting is conducted, no amounts can be determined to be owed.

**EIGHTH AFFIRMATIVE DEFENSE (No Wrongful Termination for Cause)**

Innovative did not have proper cause to terminate the Recruiter Agreement. The alleged breaches cited by Innovative as grounds for termination for cause were either: (a) not breaches at all; (b) caused by Innovative's own actions and material breaches; (c) immaterial and not sufficient to constitute cause under the agreement; (d) waived by Innovative's conduct; or (e) based on improperly calculated persistency rates. Because the termination was not properly for cause, the provisions regarding immediate payment of debit balances, acceleration of obligations, and forfeiture of rights do not apply.

**NINTH AFFIRMATIVE DEFENSE (Waiver)**

Innovative waived its right to assert the claims in the Counterclaim through its conduct, including but not limited to: (a) accepting performance under the Recruiter Agreement for an extended period despite knowledge of alleged issues; (b) failing to timely object to or terminate the agreement despite alleged knowledge of problems; (c) continuing to pay incentives and advances despite alleged knowledge of persistency issues; (d) failing to enforce agreement terms

strictly or at all; (e) making representations and engaging in conduct inconsistent with the claims now asserted; (f) accepting late payments or modified performance; (g) failing to provide timely notice of alleged defaults; and (h) acquiescing in the alleged conduct now challenged.

**TENTH AFFIRMATIVE DEFENSE (Estoppel)**

Innovative is estopped from asserting the claims in the Counterclaim based on its prior conduct, representations, and course of dealing. Innovative made representations, through words and conduct, that it would not enforce certain terms of the Recruiter Agreement or would calculate debit balances in a certain manner. Reia & Co reasonably relied on Innovative's conduct and representations to its detriment by continuing performance, accepting advances, and making business decisions based on Innovative's representations. Innovative should be estopped from now taking inconsistent positions.

**ELEVENTH AFFIRMATIVE DEFENSE (Laches)**

Innovative's claims are barred by the doctrine of laches. Innovative unreasonably delayed in asserting its claims despite having knowledge of the facts underlying those claims for months or years. Reia & Co has been prejudiced by this delay through loss of evidence, fading memories, changes in circumstances, and inability to take protective action. Innovative should be barred from pursuing these stale claims.

**TWELFTH AFFIRMATIVE DEFENSE (Statute of Limitations)**

To the extent any claims accrued prior to the applicable limitations period, such claims are barred by the applicable statute of limitations under the law of the controlling jurisdiction.

**THIRTEENTH AFFIRMATIVE DEFENSE (Lack of Causation)**

Innovative's alleged damages were not caused by any actions or omissions of Reia & Co. To the extent Innovative suffered damages, such damages were caused by: (a) Innovative's own illegal business practices and ERISA violations; (b) systemic problems with Innovative's business model; (c) deceptive customer service, retention and claims handling practices employed throughout Innovative's organization; (d) decisions and actions by Innovative's principals and management; (e) market conditions and competitive factors; (f) regulatory actions caused by Innovative's own misconduct; (g) inadequate capitalization and business planning; (h) processor decisions based on Innovative's chargeback rates; and (i) other intervening and superseding causes. There is no causal connection between Reia & Co's conduct and any damages allegedly suffered by Innovative.

**FOURTEENTH AFFIRMATIVE DEFENSE (Speculative and Uncertain Damages)**

The damages alleged by Innovative are speculative, uncertain, not proven with reasonable certainty, and not recoverable as a matter of law. Innovative has failed to establish the amount of any actual damages with the specificity and certainty required by law. The alleged debit balance is based on assumptions, projections, and calculations that are unreliable and not proven.

**FIFTEENTH AFFIRMATIVE DEFENSE (Failure to Mitigate Damages)**

Innovative failed to mitigate its alleged damages. Innovative had a duty to take reasonable steps to minimize its losses but failed to do so, including by: (a) failing to timely address underlying business problems causing customer complaints and cancellations; (b) failing to implement proper compliance measures; (c) continuing illegal business practices; (d) failing to provide adequate support to recruiters; and (e) failing to take other reasonable mitigation measures. Any damages allegedly suffered by Innovative should be reduced or barred due to Innovative's failure to mitigate.

**SIXTEENTH AFFIRMATIVE DEFENSE (Set-Off and Recoupment)**

To the extent any amounts are determined to be owed by Reia & Co (which is denied), Reia & Co is entitled to set-off and recoupment for: (a) incentives, commissions, and payments improperly withheld by Innovative from Reia & Co; (b) improper deductions and chargebacks; (c) damages suffered by Reia & Co as a result of Innovative's breaches and wrongful conduct; and (d) other amounts owed by Innovative to Reia & Co.

**SEVENTEENTH AFFIRMATIVE DEFENSE (No Conversion - Lack of Elements)**

Count II (Conversion) fails because Innovative cannot establish one or more essential elements of conversion, including: (a) ownership or right to possess specific, identifiable funds or property; (b) wrongful exercise of dominion and control by Reia & Co over such specific property; (c) unauthorized and wrongful possession or control; and/or (d) damages. Innovative cannot identify specific funds or property that were allegedly converted with the specificity

required. Any incentive payments received by Reia & Co were earned and owed under the Recruiter Agreement.

**EIGHTEENTH AFFIRMATIVE DEFENSE (Economic Loss Rule)**

To the extent Innovative's tort claim (conversion) seeks to recover purely economic losses arising from the Recruiter Agreement, such claim is barred by the economic loss rule. Innovative's remedy, if any, lies in contract, not tort. The economic loss rule bars tort recovery where the losses are purely economic and arise from contractual relationships.

**NINETEENTH AFFIRMATIVE DEFENSE (Good Faith)**

Reia & Co acted at all times in good faith and in accordance with the terms of the Recruiter Agreement. Any decisions or actions were made in good faith and based on the information available at the time. Good faith is a defense to claims of conversion and breach of contract.

**TWENTIETH AFFIRMATIVE DEFENSE (Authorization and Ratification)**

To the extent Innovative challenges any actions taken, such actions were: (a) within the scope of the Recruiter Agreement; (b) expressly or impliedly authorized by Innovative; (c) ratified by Innovative through knowledge and acquiescence; and/or (d) consistent with industry standards. Innovative cannot now claim that authorized and ratified actions constitute wrongdoing.

**TWENTY-FIRST AFFIRMATIVE DEFENSE (Preemption by ERISA)**

To the extent Innovative's state law claims relate to ERISA plans, attempt to enforce rights under the Recruiter Agreement that involve ERISA-covered benefits, or seek to recover damages based on activities involving ERISA plans, such claims are preempted by ERISA pursuant to 29 U.S.C. § 1144. ERISA's broad preemption provision bars state law claims that "relate to" ERISA plans.

**TWENTY-SECOND AFFIRMATIVE DEFENSE (Separate Corporate Identity)**

Reia & Co is a separate legal entity distinct from Arman Motiwalla and any other individuals or entities. The corporate veil of Reia & Co should be respected, and Reia & Co should not be held liable for alleged actions of Motiwalla or other individuals except to the extent authorized by applicable law and factual circumstances. Innovative has not pleaded sufficient facts to disregard Reia & Co's separate corporate identity.

**TWENTY-THIRD AFFIRMATIVE DEFENSE (No Vicarious Liability)**

To the extent Innovative seeks to hold Reia & Co liable for alleged actions of Motiwalla or other individuals, such vicarious liability is improper because: (a) Motiwalla's alleged actions were not within the scope of any agency or employment relationship with Reia & Co; (b) Motiwalla was acting as COO of Innovative, not on behalf of Reia & Co; (c) Innovative has not established the elements required for vicarious liability; and (d) Reia & Co cannot be held liable for unauthorized acts of individuals.

**TWENTY-FOURTH AFFIRMATIVE DEFENSE (Contract Interpretation and Ambiguity)**

The Recruiter Agreement is ambiguous in material respects and should be construed against Innovative as the drafter under the doctrine of contra proferentem. Under applicable principles of contract interpretation, ambiguities should be resolved in favor of Reia & Co, and the agreement should be interpreted in the manner most consistent with fairness and equity. Material ambiguities exist regarding: (a) the calculation of debit balances; (b) the aggregation provisions; (c) what constitutes "cause" for termination; (d) persistency calculation methodologies; and (e) other material terms.

**TWENTY-FIFTH AFFIRMATIVE DEFENSE (Improper Aggregation Across Separate Entities)**

The Recruiter Agreement does not authorize Innovative to aggregate obligations from Atropine (a completely separate legal entity owned by different people) and charge them against Reia & Co. To the extent Innovative's calculation of the alleged debit balance includes obligations allegedly owed by Atropine or any other separate entity, such aggregation: (a) violates the terms of the Recruiter Agreement; (b) violates principles of corporate separateness; (c) is unconscionable; (d) violates public policy; and (e) is unenforceable. Each entity is a separate legal entity with separate obligations, and one entity's alleged debts cannot be charged to another absent express authorization and proper legal basis.

**TWENTY-SIXTH AFFIRMATIVE DEFENSE (Account Stated Doctrine Inapplicable)**

To the extent Innovative claims that Reia & Co failed to timely object to account statements and therefore is bound by such statements under the account stated doctrine or similar theories, such

claims fail because: (a) the account statements provided were inaccurate, incomplete, and did not reflect a true accounting; (b) Reia & Co did object to inaccuracies when discovered; (c) the 30-day objection period in the Recruiter Agreement is unconscionable, unreasonable, and unenforceable; (d) Innovative's conduct prevented timely review and objection to account statements; (e) the statements contained unilateral calculations and assertions not agreed to by Reia & Co; and (f) the account stated doctrine does not apply where there is fraud, mistake, or disputed accounting.

**TWENTY-SEVENTH AFFIRMATIVE DEFENSE (Superseding and Intervening Causes)**

To the extent Innovative suffered damages, such damages were caused by superseding and intervening causes beyond Reia & Co's control, including: (a) regulatory actions by state departments of insurance and other agencies; (b) adverse market conditions; (c) decisions by third-party processors based on Innovative's own conduct; (d) actions by other Innovative employees, sales rooms, and recruiters; (e) Innovative's own systemic failures; (f) customer complaints and cancellations caused by Innovative's practices; (g) competitive pressures; and (h) decisions by Innovative's ownership and management. These superseding and intervening causes break the chain of causation and bar Innovative's claims.

**TWENTY-EIGHTH AFFIRMATIVE DEFENSE (Impossibility, Impracticability, and Frustration of Purpose)**

To the extent Reia & Co allegedly failed to perform any obligations under the Recruiter Agreement, such non-performance was excused by: (a) impossibility of performance resulting

from Innovative's illegal conduct and regulatory actions; (b) commercial impracticability due to circumstances beyond Reia & Co's control; and/or (c) frustration of purpose where Innovative's illegal practices made achievement of the agreement's purpose impossible. Performance was rendered impossible or impracticable by: (i) Innovative's ERISA violations; (ii) Innovative's deceptive customer service, retention and claims handling practices that caused high cancellation rates; (iii) regulatory cease and desist orders; (iv) Innovative's breaches; and (v) other circumstances beyond Reia & Co's control.

**TWENTY-NINTH AFFIRMATIVE DEFENSE (Illegality and Public Policy)**

To the extent the Recruiter Agreement required, contemplated, or was connected with participation in illegal activities, including ERISA violations, fraudulent sales practices, deceptive trade practices, and violations of insurance laws, the agreement is void and unenforceable as against public policy. Innovative cannot enforce an illegal contract or recover damages based on an illegal scheme. Courts will not enforce contracts that are contrary to law or public policy or that require illegal performance.

**THIRTIETH AFFIRMATIVE DEFENSE (Lack of Authority to Bind)**

To the extent the Recruiter Agreement or any modifications thereof were signed by someone purporting to act on behalf of Innovative or Reia & Co, that person lacked actual or apparent authority to bind the entity to the terms asserted in the Counterclaim, and/or exceeded the scope of any authority possessed. Additionally, to the extent Innovative relies on any amendments, modifications, or side agreements, such documents were not properly authorized or executed.

**THIRTY-FIRST AFFIRMATIVE DEFENSE (Release, Accord and Satisfaction)**

Reia & Co has been released from any liability to Innovative through: (a) express or implied releases; (b) settlement agreements or arrangements; (c) accord and satisfaction through performance and acceptance; and/or (d) other discharge of obligations. Any claims asserted in the Counterclaim have been released, satisfied, or discharged and are barred.

**THIRTY-SECOND AFFIRMATIVE DEFENSE (Limitation of Liability Provisions)**

The Recruiter Agreement contains provisions limiting Innovative's liability to $50,000 for various breaches and damages. Under principles of equity, fairness, and mutuality of obligation, these limitation of liability provisions should be applied reciprocally to limit any potential liability of Reia & Co under the agreement to a maximum of $50,000. Innovative cannot enforce unlimited liability provisions against Reia & Co while limiting its own liability to $50,000.

**THIRTY-THIRD AFFIRMATIVE DEFENSE (Judicial Estoppel)**

Innovative is judicially estopped from asserting positions in the Counterclaim that are inconsistent with positions it has taken in: (a) other proceedings or litigation; (b) regulatory filings or submissions; (c) its Answer to the Complaint in this action; (d) communications with regulators or government agencies; and/or (e) other sworn statements or legal positions. Innovative should not be permitted to take inconsistent positions for strategic advantage.

**THIRTY-FOURTH AFFIRMATIVE DEFENSE (No Damages or Nominal Damages Only)**

Innovative has suffered no actual damages as a result of any actions or omissions by Reia & Co, or alternatively, any damages suffered are nominal only. Innovative cannot prove actual damages with reasonable certainty, and its damage claims are speculative, inflated, unsupported by evidence, based on improper calculations, and not recoverable as a matter of law.

**THIRTY-FIFTH AFFIRMATIVE DEFENSE (Condition Precedent)**

Innovative's right to recover under the Recruiter Agreement, if any, was subject to conditions precedent that have not been satisfied or have been excused. These conditions precedent include, but are not limited to: (a) Innovative's own full performance under the agreement; (b) provision of proper notice of any alleged default in strict compliance with agreement terms; (c) opportunity to cure any alleged default; (d) proper calculation and documentation of any alleged debit balance; (e) good faith performance by Innovative; and (f) other conditions that have not been satisfied.

**THIRTY-SIXTH AFFIRMATIVE DEFENSE (Mistake)**

The Recruiter Agreement was entered into based on mutual or unilateral mistake of fact regarding material terms and circumstances, including: (a) the nature of Innovative's business practices and legal compliance; (b) the viability and sustainability of Innovative's business model; (c) the likelihood and magnitude of potential debit balances; (d) cancellation rates and persistency expectations; (e) market conditions; and (f) other material facts. Due to such mistake, the agreement should be rescinded or reformed.

**THIRTY-SEVENTH AFFIRMATIVE DEFENSE (Lack of Mutuality)**

The Recruiter Agreement lacks mutuality of obligation and is therefore unenforceable or should be reformed. The agreement imposes substantial obligations and liability on Reia & Co while providing limited corresponding obligations on Innovative. Innovative retained unilateral discretion to: (a) calculate debit balances; (b) determine what constitutes cause for termination; (c) modify terms; (d) aggregate obligations from different entities; (e) determine persistency rates; and (f) exercise other one-sided powers. This lack of mutuality renders the agreement unenforceable.

**THIRTY-EIGHTH AFFIRMATIVE DEFENSE (Penalty Clause)**

To the extent the debit balance provisions, aggregation provisions, or other financial terms of the Recruiter Agreement operate to impose liability on Reia & Co that is grossly disproportionate to any actual damages suffered by Innovative, such provisions constitute unenforceable penalty clauses. Penalty clauses are void and unenforceable under applicable law. The provisions must be reasonably related to anticipated or actual damages and cannot operate as a penalty.

**THIRTY-NINTH AFFIRMATIVE DEFENSE (Breach of Implied Covenant of Good Faith and Fair Dealing)**

Innovative breached the implied covenant of good faith and fair dealing inherent in the Recruiter Agreement by: (a) engaging in illegal business practices; (b) calculating debit balances in bad faith; (c) improperly aggregating obligations from separate entities; (d) terminating the agreement in bad faith; (e) failing to provide adequate support; (f) exercising discretionary

provisions in bad faith and in a manner designed to harm Reia & Co; and (g) other bad faith conduct. This breach excuses performance by Reia & Co and bars Innovative's claims.

**FORTIETH AFFIRMATIVE DEFENSE (Failure to Provide Adequate Notice)**

Innovative failed to provide adequate, timely, or proper notice of: (a) alleged defaults; (b) termination of the agreement; (c) calculation of alleged debit balances; (d) opportunity to cure; and (e) other matters required by the agreement and applicable law. This failure to provide proper notice bars or limits Innovative's ability to recover under the agreement.

**FORTY-FIRST AFFIRMATIVE DEFENSE (Unconscionability)**

The Recruiter Agreement contains unconscionable provisions that are unenforceable. The terms are procedurally unconscionable due to: (a) unequal bargaining power; (b) lack of opportunity to negotiate; (c) adhesion contract terms; (d) Innovative's superior knowledge and resources; and (e) Reia & Co's lack of meaningful choice. The terms are substantively unconscionable due to one-sided and oppressive provisions, including: (i) unilateral control by Innovative over debit balance calculations; (ii) extremely short time periods (30 days) for challenging account statements; (iii) aggregation provisions that allow Innovative to charge one entity's obligations against another; (iv) broad discretion for Innovative to terminate "for cause" without meaningful standards; (v) limitation of damages provisions that protect Innovative but not Reia & Co; (vi) one-sided attorneys' fees provisions; and (vii) provisions allowing Innovative to unilaterally modify terms.

**FORTY-SECOND AFFIRMATIVE DEFENSE (Void for Vagueness and Indefiniteness)**

Material provisions of the Recruiter Agreement are void for vagueness and indefiniteness, including: (a) the definition and standards for "cause" for termination; (b) the methodology for calculating persistency rates and debit balances; (c) the scope and application of aggregation provisions; (d) performance standards and expectations; and (e) other material terms. Where contract terms are too vague or indefinite to be enforceable, they cannot form the basis for liability.

**FORTY-THIRD AFFIRMATIVE DEFENSE (Rescission)**

Reia & Co is entitled to rescission of the Recruiter Agreement based on: (a) fraud in the inducement; (b) mutual or unilateral mistake; (c) failure of consideration; (d) material breach by Innovative; (e) illegality; (f) unconscionability; and/or (g) other grounds for rescission. Upon rescission, the parties should be restored to their pre-contract positions, and any alleged debit balance would be void.

**FORTY-FOURTH AFFIRMATIVE DEFENSE (Reformation)**

To the extent the Recruiter Agreement is enforceable, it should be reformed by the Court to: (a) eliminate unconscionable provisions; (b) correct improper aggregation provisions; (c) correct debit balance calculation methodologies; (d) impose reasonable time limits and notice requirements; and (e) otherwise make the agreement fair and equitable. The agreement does not reflect the true intent of the parties and should be reformed.

**FORTY-FIFTH AFFIRMATIVE DEFENSE (Election of Remedies)**

To the extent Innovative has pursued or elected certain remedies, either in this action or otherwise, such election bars Innovative from pursuing inconsistent remedies. Innovative cannot simultaneously pursue contract and tort remedies for the same alleged conduct, cannot seek both specific performance and damages, and cannot pursue other inconsistent remedies.

**FORTY-SIXTH AFFIRMATIVE DEFENSE (No Meeting of the Minds)**

There was no meeting of the minds between the parties regarding material terms of the Recruiter Agreement, including: (a) the methodology for calculating debit balances; (b) the application of aggregation provisions to separate entities; (c) persistency rate calculations; (d) what constitutes cause for termination; and (e) other material terms. Without a meeting of the minds on material terms, no enforceable contract exists.

**FORTY-SEVENTH AFFIRMATIVE DEFENSE (Cy Pres or Equitable Adjustment)**

To the extent any amounts are determined to be owed (which is denied), the Court should apply principles of equity to reduce, adjust, or limit such amounts based on: (a) Innovative's own fault and contributory conduct; (b) the unconscionability of imposing unlimited liability; (c) the disproportion between alleged liability and actual damages; (d) Innovative's unclean hands; (e) equitable considerations of fairness and justice; and (f) other equitable factors. The Court has inherent equitable power to adjust claims to achieve a just result.

**FORTY-EIGHTH AFFIRMATIVE DEFENSE (CPA Supersedes All Prior Agreements)**

Reia & Co asserts that the Commission Purchase Agreement ("CPA"), executed on or about July 24, 2023, by Innovative Partners, Reia & Co, and Advance Co. (Advanced Plus, LLC), may govern and supersede all prior agreements relating to the commissions and receivables at issue in this litigation. The CPA contains a clear conflict and supremacy clause that establishes it as the controlling document when inconsistent with the prior Producer/Recruiter Agreement. It expressly provides that all rights purchased under the CPA supersede any rights retained by Innovative, thereby limiting Innovative's ability to rely on the earlier agreement. The CPA includes an express waiver of setoff and release of any security interest held by Innovative while the Producer remains obligated to Advance Co., barring Innovative from withholding or deducting payments relating to the purchased receivables. The CPA mandates direct payment of receivables to Advance Co. and requires that all funds due to Producer be applied to satisfy Advance Co.'s purchased interests before any proceeds are paid to Producer, effectively reducing any claimed balance owed to Innovative. The CPA's merger and integration clause confirms that it constitutes the complete and exclusive agreement of the parties and supersedes all prior oral or written agreements, reinforcing its supremacy over the Producer/Recruiter Agreement. The CPA designates Advance Co. as a third-party beneficiary with authority to enforce the agreement against Innovative and expressly assigns ownership of the purchased commission streams to Advance Co. in perpetuity while the related policies remain active, leaving no residual right for Innovative to claim those revenues. Reia & Co pleads that Advance Co. funded and implemented the CPA as contemplated, that Innovative accepted and processed payments consistent with its terms, and that the agreement contains no personal guaranty by any individual. Collectively, these provisions demonstrate that the CPA supersedes and governs the parties' relationship with

respect to the commissions and receivables at issue. Therefore, Innovative's claims that rely on inconsistent provisions of the prior Producer/Recruiter Agreement are barred, waived, and superseded by the express contractual terms of the CPA.

**RESERVATION OF RIGHTS**

Reia & Co expressly reserves the right to assert additional affirmative defenses as may be revealed through discovery, further investigation, or legal research. Reia & Co does not intend to waive any defenses by failing to assert them in this initial Answer and may seek leave to amend to add additional defenses as appropriate. Reia & Co also reserves all rights regarding the assertion of counterclaims, cross-claims, or third-party claims as may be appropriate following further investigation and discovery

**DATED DECEMBER 8, 2025**                                    **FOR PLAINTIFF:**

BY: */s/ G. Ware Cornell, Jr.*
G. Ware Cornell, Jr.
FBN: 203920
ware@warecornell.com
**CORNELL & ASSOCIATES, P.A.**
2645 Executive Park Drive
Weston, Fla. 33331
(954) 618-1041

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel

or parties who are not authorized to receive electronically Notices of Electronic Filing this 29th

day of December , 2025.

*/s/ G. Ware Cornell, Jr.*
**CORNELL & ASSOCIATES, P.A.**
Counsel for Plaintiff

**SERVICE LIST**

Joshua Lee Spoont
Nate Edenfield
1900 NW Corporate Blvd., Ste. 301W
Boca Raton, FL 33431

josh@sodhispoont.com,

Nate@sodhispoont.com

service@sodhispoont.com