**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
**CIVIL ACTION**
CASE NO: 0:25-cv-61290-LEIBOWITZ

**ARMAN MOTIWALLA**, an individual,
    Plaintiff

v.

**INNOVATIVE PARTNERS L.P.**, a Texas limited partnership,
    Defendants

_____

**INNOVATIVE PARTNERS L.P.**, a Texas limited partnership,
    Counter-Plaintiff

v.

**ARMAN MOTIWALLA**, an individual and **REIA & CO LLC**,
a Delaware limited liability company,
    Counter-Defendants

_____

**COUNTER-DEFENDANT ARMAN MOTIWALLA'S AMENDED ANSWER AND**
**AFFIRMATIVE DEFENSES TO COUNTERCLAIM**

Counter-Defendant ARMAN MOTIWALLA ("Motiwalla"), by and through undersigned counsel, hereby files his Amended Answer and Affirmative Defenses to Counter-Plaintiff INNOVATIVE PARTNERS L.P.'s Counterclaim and states as follows:

ANSWER TO COUNTERCLAIM

I.   INTRODUCTION

1.   Denied. The allegations consist of characterizations, conclusions, inflammatory rhetoric, and legal conclusions to which no response is required. To the extent a response is deemed necessary, Motiwalla denies each allegation.

2.  Denied. The allegations consist of characterizations, conclusions, inflammatory rhetoric, and legal conclusions to which no response is required. To the extent a response is deemed necessary, Motiwalla specifically denies that he abused any position of trust, engaged in fraud, conversion, breaches of duty or contract, or caused Innovative any losses.

II.  PARTIES, JURISDICTION, AND VENUE

3.  Admitted that Motiwalla is the Plaintiff in the underlying action and was, at all material times, a resident of Broward County, Florida, over 18 years of age. The remaining allegations are denied.

4.  Motiwalla lacks sufficient knowledge or information to form a belief as to the truth of the allegations concerning REIA & CO LLC and therefore denies the same.

5.  Motiwalla lacks sufficient knowledge or information to form a belief as to the truth of the allegations concerning the propriety of joining Reia & Co as a counterclaim defendant and therefore denies the same. This paragraph also contains legal conclusions to which no response is required.

6.  This paragraph contains legal conclusions to which no response is required. To the extent a response is deemed necessary, Motiwalla denies that this Court has jurisdiction over the Counterclaim as to him.

7.  Motiwalla lacks sufficient knowledge or information to form a belief as to the truth of the allegations concerning personal jurisdiction over Reia & Co and therefore denies the same.

8.  This paragraph contains legal conclusions to which no response is required. To the extent a response is deemed necessary, the allegations are denied.

9. Motiwalla lacks sufficient knowledge or information to form a belief as to the truth of the allegations and therefore denies the same.

10. This paragraph contains legal conclusions to which no response is required. To the extent a response is deemed necessary, the allegations are denied.

III. BACKGROUND

11. Motiwalla admits that Innovative offers health care benefit plans to individuals and that Ahmed Shokry was involved in founding and operating Innovative. Motiwalla lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations and therefore denies the same.

12. Motiwalla is without knowledge so therefore denied.

13. Motiwalla is without knowledge so therefore denied.

14. Motiwalla is without knowledge so therefore denied.

15. Motiwalla is without knowledge so therefore denied.

A. The Hiring of Motiwalla

16. Admitted that Shokry spoke with Motiwalla about joining Innovative and that they had worked together previously. The remaining allegations are denied.

17. Admitted that Shokry and Motiwalla had conversations during the time period referenced. The characterization of the substance and content of those conversations is denied.

18. Denied. Motiwalla did not misrepresent his experience or expertise. Motiwalla had substantial relevant experience in business operations, including credit card processing and the health benefit industry.

19. Denied. The allegations mischaracterize the nature of Motiwalla's engagement with Innovative and his relationship with Reia & Co.

20. Denied. The allegations mischaracterize the nature of Motiwalla's engagement with Innovative and his relationship with Reia & Co.

21. Admitted that Motiwalla began working for Innovative in early 2023, though Motiwalla avers the correct start date was April or May 2023.

B.   Motiwalla Botched Innovative's Credit Card Processing

22. Denied. Motiwalla performed his duties competently and professionally. Any credit card processing issues were the result of Innovative's own systemic problems, illegal and fraudulent practices, high chargeback rates due to customer dissatisfaction caused by Innovative's customer service and retention practices, claims and benefit handling, and Innovative management's failures.

23. To the extent these paragraphs suggest Motiwalla failed in his duties or caused processing problems, such allegations are denied. Any processing difficulties were caused by Innovative's underlying business practices, ERISA violations, customer service handling and retention tactics, and systemic failures.

24. To the extent these paragraphs suggest Motiwalla failed in his duties or caused processing problems, such allegations are denied. Any processing difficulties were caused by Innovative's underlying business practices, ERISA violations, customer service handling and retention tactics, and systemic failures.

25. To the extent these paragraphs suggest Motiwalla failed in his duties or caused processing problems, such allegations are denied. Any processing difficulties were caused by

Innovative's underlying business practices, ERISA violations, customer service handling and retention tactics, and systemic failures.

26. To the extent these paragraphs suggest Motiwalla failed in his duties or caused processing problems, such allegations are denied. Any processing difficulties were caused by Innovative's underlying business practices, ERISA violations, customer service handling and retention tactics, and systemic failures.

27. To the extent these paragraphs suggest Motiwalla failed in his duties or caused processing problems, such allegations are denied. Any processing difficulties were caused by Innovative's underlying business practices, ERISA violations, customer service handling and retention tactics, and systemic failures.

28. To the extent these paragraphs suggest Motiwalla failed in his duties or caused processing problems, such allegations are denied. Any processing difficulties were caused by Innovative's underlying business practices, ERISA violations, customer service handling and retention tactics, and systemic failures.

29. To the extent these paragraphs suggest Motiwalla failed in his duties or caused processing problems, such allegations are denied. Any processing difficulties were caused by Innovative's underlying business practices, ERISA violations, customer service handling and retention tactics, and systemic failures.

30. To the extent these paragraphs suggest Motiwalla failed in his duties or caused processing problems, such allegations are denied. Any processing difficulties were caused by Innovative's underlying business practices, ERISA violations, customer service handling and retention tactics, and systemic failures.

31. To the extent these paragraphs suggest Motiwalla failed in his duties or caused processing problems, such allegations are denied. Any processing difficulties were caused by Innovative's underlying business practices, ERISA violations, customer service handling and retention tactics, and systemic failures.

32. To the extent these paragraphs suggest Motiwalla failed in his duties or caused processing problems, such allegations are denied. Any processing difficulties were caused by Innovative's underlying business practices, ERISA violations, customer service handling and retention tactics, and systemic failures.

33. To the extent these paragraphs suggest Motiwalla failed in his duties or caused processing problems, such allegations are denied. Any processing difficulties were caused by Innovative's underlying business practices, ERISA violations, customer service handling and retention tactics, and systemic failures.

C. Motiwalla's Fraudulent Conduct is Brought to Light

34. Denied. Motiwalla did not engage in fraudulent activities. The allegations are false and defamatory. To the extent Motiwalla made operational decisions in his role as COO, such decisions were made in good faith and in the exercise of reasonable business judgment. Motiwalla was terminated in retaliation for his complaints about Innovative's ERISA violations and other illegal practices.

35. Denied. Motiwalla did not engage in fraudulent activities. The allegations are false and defamatory. To the extent Motiwalla made operational decisions in his role as COO, such decisions were made in good faith and in the exercise of reasonable business judgment.

Motiwalla was terminated in retaliation for his complaints about Innovative's ERISA violations and other illegal practices.

36. Denied. Motiwalla did not engage in fraudulent activities. The allegations are false and defamatory. To the extent Motiwalla made operational decisions in his role as COO, such decisions were made in good faith and in the exercise of reasonable business judgment. Motiwalla was terminated in retaliation for his complaints about Innovative's ERISA violations and other illegal practices.

37. Denied. Motiwalla did not engage in fraudulent activities. The allegations are false and defamatory. To the extent Motiwalla made operational decisions in his role as COO, such decisions were made in good faith and in the exercise of reasonable business judgment. Motiwalla was terminated in retaliation for his complaints about Innovative's ERISA violations and other illegal practices.

38. Denied. Motiwalla did not engage in fraudulent activities. The allegations are false and defamatory. To the extent Motiwalla made operational decisions in his role as COO, such decisions were made in good faith and in the exercise of reasonable business judgment. Motiwalla was terminated in retaliation for his complaints about Innovative's ERISA violations and other illegal practices.

D. Reia & Co's Breach of Recruiter Agreement and Debit Balance

39. Denied. The Recruiter Agreement attached is unsigned. Motiwalla admits that a recruiter agreement was entered into and that Innovative sent a letter dated May 29, 2025. Motiwalla denies that any amounts are owed under the Recruiter Agreement. Motiwalla specifically denies that the alleged debit balance is accurate, properly calculated, or owed.

40. Motiwalla denies the allegations regarding the calculation and amount of any alleged debit balance, the propriety of any termination, and any liability under any guaranty provision. The alleged debit balance of $1,215,880.83 is not accurate or owed. No amounts are owed by Motiwalla.

41. Motiwalla denies the allegations regarding the calculation and amount of any alleged debit balance, the propriety of any termination, and any liability under any guaranty provision. The alleged debit balance of $1,215,880.83 is not accurate or owed. No amounts are owed by Motiwalla.

42. Motiwalla denies the allegations regarding the calculation and amount of any alleged debit balance, the propriety of any termination, and any liability under any guaranty provision. The alleged debit balance of $1,215,880.83 is not accurate or owed. No amounts are owed by Motiwalla.

43. Motiwalla denies the allegations regarding the calculation and amount of any alleged debit balance, the propriety of any termination, and any liability under any guaranty provision. The alleged debit balance of $1,215,880.83 is not accurate or owed. No amounts are owed by Motiwalla.

44. Motiwalla denies the allegations regarding the calculation and amount of any alleged debit balance, the propriety of any termination, and any liability under any guaranty provision. The alleged debit balance of $1,215,880.83 is not accurate or owed. No amounts are owed by Motiwalla.

45. Motiwalla denies the allegations regarding the calculation and amount of any alleged debit balance, the propriety of any termination, and any liability under any guaranty provision. The

alleged debit balance of $1,215,880.83 is not accurate or owed. No amounts are owed by Motiwalla.

46. Motiwalla denies the allegations regarding the calculation and amount of any alleged debit balance, the propriety of any termination, and any liability under any guaranty provision. The alleged debit balance of $1,215,880.83 is not accurate or owed. No amounts are owed by Motiwalla.

47. Motiwalla denies the allegations regarding the calculation and amount of any alleged debit balance, the propriety of any termination, and any liability under any guaranty provision. The alleged debit balance of $1,215,880.83 is not accurate or owed. No amounts are owed by Motiwalla.

48. Motiwalla denies the allegations regarding the calculation and amount of any alleged debit balance, the propriety of any termination, and any liability under any guaranty provision. The alleged debit balance of $1,215,880.83 is not accurate or owed. No amounts are owed by Motiwalla.

49. Motiwalla denies the allegations regarding the calculation and amount of any alleged debit balance, the propriety of any termination, and any liability under any guaranty provision. The alleged debit balance of $1,215,880.83 is not accurate or owed. No amounts are owed by Motiwalla.

E.   Motiwalla Causes and Hides DOI Complaints from Innovative

50. Denied. Motiwalla repeatedly informed Innovative management about compliance issues, customer complaints, and regulatory risks. The allegations that Motiwalla concealed DOI

complaints or misrepresented legal fees are false. Any compliance failures or regulatory problems were caused by Innovative's systemic illegal practices.

51. Denied. Motiwalla repeatedly informed Innovative management about compliance issues, customer complaints, and regulatory risks. The allegations that Motiwalla concealed DOI complaints or misrepresented legal fees are false. Any compliance failures or regulatory problems were caused by Innovative's systemic illegal practices.

52. Denied. Motiwalla repeatedly informed Innovative management about compliance issues, customer complaints, and regulatory risks. The allegations that Motiwalla concealed DOI complaints or misrepresented legal fees are false. Any compliance failures or regulatory problems were caused by Innovative's systemic illegal practices.

53. Denied. Motiwalla repeatedly informed Innovative management about compliance issues, customer complaints, and regulatory risks. The allegations that Motiwalla concealed DOI complaints or misrepresented legal fees are false. Any compliance failures or regulatory problems were caused by Innovative's systemic illegal practices.

54. Denied. Motiwalla repeatedly informed Innovative management about compliance issues, customer complaints, and regulatory risks. The allegations that Motiwalla concealed DOI complaints or misrepresented legal fees are false. Any compliance failures or regulatory problems were caused by Innovative's systemic illegal practices.

55. Denied. Motiwalla repeatedly informed Innovative management about compliance issues, customer complaints, and regulatory risks. The allegations that Motiwalla concealed DOI complaints or misrepresented legal fees are false. Any compliance failures or regulatory problems were caused by Innovative's systemic illegal practices.

56. Denied. Motiwalla repeatedly informed Innovative management about compliance issues, customer complaints, and regulatory risks. The allegations that Motiwalla concealed DOI complaints or misrepresented legal fees are false. Any compliance failures or regulatory problems were caused by Innovative's systemic illegal practices.

57. Denied. Motiwalla repeatedly informed Innovative management about compliance issues, customer complaints, and regulatory risks. The allegations that Motiwalla concealed DOI complaints or misrepresented legal fees are false. Any compliance failures or regulatory problems were caused by Innovative's systemic illegal practices.

COUNT I - FRAUD (against Motiwalla)

58. Motiwalla incorporates by reference his responses to paragraphs 1 through 57 above.

59. Denied. Motiwalla did not make any material misrepresentations or conceal any material facts. Motiwalla did not make false statements, did not act with knowledge of falsity or reckless disregard for truth, and did not intend that Innovative rely on any false statements. Innovative did not suffer any damages as a direct and proximate result of any actions by Motiwalla. Any damages Innovative suffered were caused by Innovative's own illegal business practices and systemic failures.

60. Denied. Motiwalla did not make any material misrepresentations or conceal any material facts. Motiwalla did not make false statements, did not act with knowledge of falsity or reckless disregard for truth, and did not intend that Innovative rely on any false statements. Innovative did not suffer any damages as a direct and proximate result of any actions by Motiwalla. Any damages Innovative suffered were caused by Innovative's own illegal business practices and systemic failures.

61. Denied. Motiwalla did not make any material misrepresentations or conceal any material facts. Motiwalla did not make false statements, did not act with knowledge of falsity or reckless disregard for truth, and did not intend that Innovative rely on any false statements. Innovative did not suffer any damages as a direct and proximate result of any actions by Motiwalla. Any damages Innovative suffered were caused by Innovative's own illegal business practices and systemic failures.

62. Denied. Motiwalla did not make any material misrepresentations or conceal any material facts. Motiwalla did not make false statements, did not act with knowledge of falsity or reckless disregard for truth, and did not intend that Innovative rely on any false statements. Innovative did not suffer any damages as a direct and proximate result of any actions by Motiwalla. Any damages Innovative suffered were caused by Innovative's own illegal business practices and systemic failures.

63. Denied. Motiwalla did not make any material misrepresentations or conceal any material facts. Motiwalla did not make false statements, did not act with knowledge of falsity or reckless disregard for truth, and did not intend that Innovative rely on any false statements. Innovative did not suffer any damages as a direct and proximate result of any actions by Motiwalla. Any damages Innovative suffered were caused by Innovative's own illegal business practices and systemic failures.

COUNT II - CONVERSION (against Motiwalla and Reia & Co)

64. Motiwalla incorporates by reference his responses to paragraphs 1 through 57 above.

65. Denied. Motiwalla did not engage in fraudulent transaction processing. Any operational decisions regarding transaction processing were made in good faith and in the exercise of

reasonable business judgment. Motiwalla did not wrongfully exercise dominion and control over any of Innovative's funds and did not cause Innovative to suffer any damages.

66. Denied. Motiwalla did not engage in fraudulent transaction processing. Any operational decisions regarding transaction processing were made in good faith and in the exercise of reasonable business judgment. Motiwalla did not wrongfully exercise dominion and control over any of Innovative's funds and did not cause Innovative to suffer any damages.

67. Denied. Motiwalla did not engage in fraudulent transaction processing. Any operational decisions regarding transaction processing were made in good faith and in the exercise of reasonable business judgment. Motiwalla did not wrongfully exercise dominion and control over any of Innovative's funds and did not cause Innovative to suffer any damages.

68. Denied. Motiwalla did not engage in fraudulent transaction processing. Any operational decisions regarding transaction processing were made in good faith and in the exercise of reasonable business judgment. Motiwalla did not wrongfully exercise dominion and control over any of Innovative's funds and did not cause Innovative to suffer any damages.

69. Denied. Motiwalla did not engage in fraudulent transaction processing. Any operational decisions regarding transaction processing were made in good faith and in the exercise of reasonable business judgment. Motiwalla did not wrongfully exercise dominion and control over any of Innovative's funds and did not cause Innovative to suffer any damages.

COUNT III - BREACH OF FIDUCIARY DUTY (against Motiwalla)

70. Motiwalla incorporates by reference his responses to paragraphs 1 through 57 above.

71. Denied. Motiwalla did not owe fiduciary duties to Innovative. Motiwalla was either an employee or independent contractor, neither of which relationship creates the fiduciary

duties alleged. Motiwalla did not breach any fiduciary duties. Innovative did not suffer damages as a result of any actions by Motiwalla. Any damages were caused by Innovative's own illegal business practices and systemic failures.

72. Denied. Motiwalla did not owe fiduciary duties to Innovative. Motiwalla was either an employee or independent contractor, neither of which relationship creates the fiduciary duties alleged. Motiwalla did not breach any fiduciary duties. Innovative did not suffer damages as a result of any actions by Motiwalla. Any damages were caused by Innovative's own illegal business practices and systemic failures.

73. Denied. Motiwalla did not owe fiduciary duties to Innovative. Motiwalla was either an employee or independent contractor, neither of which relationship creates the fiduciary duties alleged. Motiwalla did not breach any fiduciary duties. Innovative did not suffer damages as a result of any actions by Motiwalla. Any damages were caused by Innovative's own illegal business practices and systemic failures.

74. Denied. Motiwalla did not owe fiduciary duties to Innovative. Motiwalla was either an employee or independent contractor, neither of which relationship creates the fiduciary duties alleged. Motiwalla did not breach any fiduciary duties. Innovative did not suffer damages as a result of any actions by Motiwalla. Any damages were caused by Innovative's own illegal business practices and systemic failures.

75. Denied. Motiwalla did not owe fiduciary duties to Innovative. Motiwalla was either an employee or independent contractor, neither of which relationship creates the fiduciary duties alleged. Motiwalla did not breach any fiduciary duties. Innovative did not suffer

damages as a result of any actions by Motiwalla. Any damages were caused by Innovative's own illegal business practices and systemic failures.

76. Denied. Motiwalla did not owe fiduciary duties to Innovative. Motiwalla was either an employee or independent contractor, neither of which relationship creates the fiduciary duties alleged. Motiwalla did not breach any fiduciary duties. Innovative did not suffer damages as a result of any actions by Motiwalla. Any damages were caused by Innovative's own illegal business practices and systemic failures.

### COUNT V - BREACH OF RECRUITER AGREEMENT (against Motiwalla)

82. Motiwalla incorporates by reference his responses to paragraphs 1 through 57 above.

83. Denied. Motiwalla is not liable as a guarantor. The guaranty is unenforceable. No debit balance is owed. Innovative is not entitled to recover from Motiwalla.

84. Denied. Motiwalla is not liable as a guarantor. The guaranty is unenforceable. No debit balance is owed. Innovative is not entitled to recover from Motiwalla.

85. Denied. Motiwalla is not liable as a guarantor. The guaranty is unenforceable. No debit balance is owed. Innovative is not entitled to recover from Motiwalla.

86. Denied. Motiwalla is not liable as a guarantor. The guaranty is unenforceable. No debit balance is owed. Innovative is not entitled to recover from Motiwalla.

87. Denied. Motiwalla is not liable as a guarantor. The guaranty is unenforceable. No debit balance is owed. Innovative is not entitled to recover from Motiwalla.

### GENERAL DENIAL

Motiwalla denies each allegation in the Counterclaim not expressly admitted above.

AFFIRMATIVE DEFENSES

In asserting these affirmative defenses, Motiwalla does not admit any wrongdoing or liability and specifically denies all allegations.

FIRST AFFIRMATIVE DEFENSE: FAILURE TO STATE A CAUSE OF ACTION

a. The Counterclaim's claims fail because there was no meeting of the minds as to the essential terms of the Recruiter Agreement. Motiwalla and Reia & Co were misled and lied to by Innovative and its principals/agents regarding essential terms, including but not limited to the conditions for repayment of any incentive advances and the calculation of any purported "Debit Balance." Motiwalla and Reia & Co did not agree with the essential terms as relied upon and set forth by Innovative in its Counterclaim.

b. Contradictory Exhibits. The claims in the Counterclaim are based on Innovative's own characterizations and interpretations of the Recruiter Agreement, which are contradicted by the plain language of the agreement itself, attached as Exhibit A to the Counterclaim. Under Florida law, where the allegations of a complaint are contradicted by an attached exhibit, the exhibit controls. Because the Counterclaim's core allegations are refuted by its own exhibit, the Counterclaim is legally insufficient and fails to state a cause of action upon which relief can be granted. Innovative attempts to provide alternative meanings to language in Exhibit A.

SECOND AFFIRMATIVE DEFENSE: UNCONSCIONABILITY

The Recruiter Agreement is unconscionable and thereby void and/or unenforceable. The Recruiter Agreement was entered into in a fraudulent and misleading manner by Innovative and its principals/agents. The key provisions that Innovative relies upon were contrary to and/or

minimized by Innovative's and its principals/agents' practices and representations. The relative bargaining power was one-sided with Innovative and/or its principals/agents having a form Recruiter Agreement that was on a take it or leave it basis. Motiwalla and Reia & Co had no meaningful choice at the time the Recruiter Agreement was entered into. Further, the terms of the Recruiter Agreement are unreasonable and unfair to an outrageous degree. Innovative and its principals/agents continued to misrepresent and fraudulently induce Motiwalla and Reia & Co to continue doing business with Innovative.

THIRD AFFIRMATIVE DEFENSE: FRAUD

a.  Inducement and Misrepresentations. Innovative's claims against Motiwalla fail, in whole or in part, due to fraud in the inducement and misrepresentation. Innovative and its principals/agents induced Motiwalla and Reia & Co to do business with Innovative, and misrepresented to them the manner that they would get paid including retention of residuals, the obligations regarding incentive/advanced commissions—stating they would not be responsible for debit balances, the support and role of Innovative and its customer service team. In reliance on Innovative's and its principals/agents' misrepresentations, Motiwalla and Reia & Co began selling ERISA health plans for Innovative. These inducements and misrepresentations occurred prior to the Recruiter Agreement, subsequent to the Recruiter Agreement but before actually doing business together, and while doing business together to fraudulently keep working with Innovative and selling policies. Innovative's and its principals/agents' fraudulent inducement and misrepresentation bars any personal liability by the purported guarantor Defendant ARMAN MOTIWALLA.

b. Employee Retirement Income Security Act of 1974 ("ERISA") Fraud. Innovative and its principals/agents Ahmed Shokry and/or Christopher James Pagnanelli, in violation of fiduciary duties and ERISA law, 29 U.S.C. Chapter 18 and 29 CFR § 2550.404a-1, improperly used and misappropriated plan funds and used the plan funds for the business and incentive/commission advances to Innovative's recruiters such as Motiwalla and Reia & Co, and concealed same from them. Further, 29 U.S.C. § 1109 requires any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries shall be personally liable to make good to such plan any losses to the plan resulting from such breach, and to restore to such plan any profits such fiduciary which have been made through use of assets of the plan by the fiduciary. Therefore, Innovative and its principals/agents Ahmed Shokry and/or Christopher James Pagnanelli shall be personally liable to repay the improper advanced funds to Motiwalla and Reia & Co as well as any ill-gotten gains they received. Motiwalla and Reia & Co never agreed to be a part of Innovative, Ahmed Shokry, and Christopher James Pagnanelli's fraudulent and possibly criminal actions with ERISA plan funds, and never would have done business with Innovative had they known.

FOURTH AFFIRMATIVE DEFENSE: ILLEGALITY AND VOID AS AGAINST PUBLIC POLICY

Innovative's claims fail, in whole or in part, because its principals and agents used misappropriated funds, including protected ERISA plan funds, to provide the very advancement funds to Motiwalla and Reia & Co that Innovative now seeks to recover. As such, the Recruiter Agreement was an essential instrumentality of Innovative's illegal scheme and is therefore

illegal, void, and unenforceable as a matter of law and public policy. This Court should not be used as an instrument to enforce a contract that is so closely intertwined with and in furtherance of an illegal enterprise.

FIFTH AFFIRMATIVE DEFENSE: UNCLEAN HANDS

Innovative's claims are barred by the doctrine of unclean hands because Innovative has engaged in a course of fraudulent, malicious, and inequitable conduct as part of a deliberate scheme to enrich itself at Motiwalla's and Reia & Co's expense. This scheme, which makes Innovative's hands unclean, includes, but is not limited to:

a.  Interference. Innovative improperly interfered with Motiwalla's and Reia & Co's business. Innovative and its principals/agents made defamatory statements to industry peers about Motiwalla and Reia & Co with the intent to harm them, and improperly interfered with their business contracts and relationships. Further, Innovative improperly interfered with Reia & Co LLC by shutting off it and its agents' access and ability to sell Innovative's products without prior written termination for cause as required by the Recruiter Agreement, and mishandled and misapplied Reia & Co LLC's plan participants and related financials, twisted the policies so plan participants would leave to go to Innovative or an affiliated entity, and then after a period of eight months deceitfully attempted to provide termination for cause.

b.  Manipulation of data. Innovative failed to provide Motiwalla and Reia & Co with the data required for their business and in relation to the debit balances, improperly accounted for and manipulated the financial data related to them.

c.  Stealing/sabotaging clients/policies. Innovative handled all plan benefits and customer service, not Motiwalla or Reia & Co. Innovative would not provide benefits to clients,

encouraged clients to cancel their plans, encouraged clients to change their plans and move them to Innovative and/or another entity not associated with Motiwalla or Reia & Co, and simply failed to provide quality customer service causing clients to cancel their plans all while blaming Motiwalla and Reia & Co for the resulting poor "persistency."

d.  Fraud. Motiwalla reincorporates his Third Affirmative Defense as if stated fully herein.

e.  Pattern of Manufactured Breaches. Upon information and belief, Innovative has engaged in a pattern and practice of terminating its recruiters under similar pretextual grounds. Innovative manufactured a purported breach of the Recruiter Agreement to terminate Reia & Co "for cause," thereby attempting to "double-dip" by retaining Reia & Co's book of business while simultaneously demanding immediate repayment of the entire debit balance. This action was not an isolated event but was consistent with Innovative's business model of churning through recruiters to its own financial benefit.

SIXTH AFFIRMATIVE DEFENSE: ESTOPPEL

Motiwalla reincorporates his Affirmative Defense 3.a. as if stated fully herein. Innovative is estopped from trying to enforce provisions of the Recruiter Agreement when Innovative and its principals/agents previously advised Motiwalla and Reia & Co otherwise and they detrimentally relied and acted on same.

SEVENTH AFFIRMATIVE DEFENSE: PRIOR BREACH

Innovative's claims fail, in whole or in part, because Innovative materially breached the Recruiter Agreement prior to any alleged breach by Motiwalla or Reia & Co. Innovative's prior breaches include, but are not limited to:

a. Violating the implied covenant of good faith and fair dealing by actively sabotaging Motiwalla's and Reia & Co's client relationships, thereby making it impossible for them to meet the "persistency" levels Innovative now cites as the basis for termination.

b. Failing to provide accurate financial statements and manipulating the data used to calculate commissions and the purported "Debit Balance," in breach of its obligations under the agreement.

c. Using the Recruiter Agreement as an instrument to further an illegal enterprise funded by misappropriated ERISA plan funds, which constitutes a breach of the entire agreement from its inception.

EIGHTH AFFIRMATIVE DEFENSE: FAILURE TO MITIGATE DAMAGES

Innovative has failed to take reasonable steps to mitigate its alleged damages. Innovative at all times retained full control over benefit administration and customer service for the plans sold by Reia & Co LLC. Any damages Innovative claims in the form of a "Debit Balance" were directly caused or exacerbated by its own failure to provide adequate service and its active sabotage of client relationships, as alleged in Motiwalla's other affirmative defenses. Innovative cannot recover for damages that it could have reasonably avoided through competent and good-faith performance of its own duties.

NINTH AFFIRMATIVE DEFENSE: FAILURE OF CONDITIONS PRECEDENT

Innovative's claims fail in whole, or in part, as Innovative failed to satisfy conditions precedent, including, but not limited to failure to properly calculate and timely provide debit balances, provide accounting of collected premiums, and comply with termination procedures.

Innovative failed to timely provide a proper written termination for cause notice as required by the Recruiter Agreement.

TENTH AFFIRMATIVE DEFENSE: WAIVER, ESTOPPEL, AND LACHES

Innovative's claims are barred, in whole or in part, by the doctrines of waiver, estoppel, and laches. Innovative alleges a breach and/or termination occurred on or about August 30, 2024, but waited more than eight months, until May 29, 2025, to send a formal written notice terminating the agreement and demanding immediate repayment. By failing to exercise its purported right to terminate and accelerate the debt in a timely manner, Innovative has waived that right as it relates to any attempt to state the August 2024 date controls for the date of termination. During this eight-month period, Innovative continued to administer the book of business generated by Reia & Co and accept the benefits of premiums paid by these clients. Innovative's unreasonable and prejudicial delay bars its claim.

ELEVENTH AFFIRMATIVE DEFENSE: CONTRACTUAL WAIVER AND RELEASE BY SUBSEQUENT CONTRACT

Innovative's claims are barred by the express terms of the Commission Purchase Agreement ("CPA") executed by Innovative, Reia & Co, and a third party, Advanced Plus, LLC, on or about July 24, 2023.

a.  After executing the Recruiter Agreement on July 17, 2023, the parties entered into a subsequent, superseding agreement (the "CPA") on or about July 24, 2023, a true and correct copy of which is attached hereto as Exhibit A.

b. This subsequent CPA explicitly states that in the event of a conflict with the prior Recruiter Agreement, the terms of the CPA "shall supersede any rights INNOVATIVE has under the [Recruiter Agreement]."

c. Pursuant to Section C(3) of the CPA, INNOVATIVE expressly "waived" its right to deduct from any of Reia & Co's compensation "any indebtedness or other amounts that may be due and owing by Producer to INNOVATIVE."

d. Furthermore, the subsequent CPA contains no personal guarantee by Defendant MOTIWALLA. By omitting the personal guarantee from the subsequent and superseding agreement governing the financial obligations, the parties extinguished any such guarantee that may have existed in the prior Recruiter Agreement.

e. Because the parties' subsequent CPA supersedes the prior Recruiter Agreement, contains an express waiver of the claims asserted, and extinguishes any prior personal guarantee, Innovative's Counterclaim is barred as to Motiwalla.

TWELFTH AFFIRMATIVE DEFENSE: PLAINTIFF IS NOT THE REAL PARTY IN INTEREST

a. Innovative's claims are barred because Innovative is not the real party in interest to bring this action.

b. Pursuant to the Commission Purchase Agreement ("CPA") attached as Exhibit A, Innovative sold, assigned, and transferred its rights and interests with respect to the commissions and receivables at issue to a third party, Advanced Plus, LLC ("ADVANCE CO.").

c. As a result of this sale and assignment, any claims related to the commission advances and the resulting debit balance now belong to ADVANCE CO., not Innovative.

d.  Therefore, Innovative lacks standing to prosecute this action, which must be brought, if at all, by the real party in interest, ADVANCE CO.

## RESERVATION OF RIGHTS

Motiwalla expressly reserves the right to assert additional affirmative defenses as may be revealed through discovery, further investigation, or legal research. Motiwalla does not intend to waive any defenses by failing to assert them in this Amended Answer and may seek leave to amend to add additional defenses as appropriate.

## DEMAND FOR RELIEF

WHEREFORE, Counter-Defendant ARMAN MOTIWALLA respectfully requests that this Court:

1.  Dismiss the Counterclaim in its entirety with prejudice;

2.  Enter judgment in favor of Motiwalla and against Innovative on all counts of the Counterclaim;

3.  Award Motiwalla his costs, expenses, and reasonable attorneys' fees incurred in defending against the Counterclaim;

4.  Grant such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Counter-Defendant, Arman Motiwalla, hereby demands a trial by jury on all issues so triable in this action.

DATED FEBRUARY 6, 2026

BY: */s/ G. Ware Cornell, Jr.*
G. Ware Cornell, Jr.
FBN: 203920

ware@warecornell.com
**CORNELL & ASSOCIATES, P.A.**
2645 Executive Park Drive
Weston, Fla. 33331
(954) 618-1041

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing document with the Clerk of Court using

CM/ECF and served to Joshua L. Spoont, Eric M. Sodhi, Nathaniel M. Edenfield, and Mauricio

A. Torres, Counsel for Defendant, this 6th day of February, 2026.

BY: */s/ G. Ware Cornell, Jr.*
**CORNELL & ASSOCIATES, P.A.**